The BANK OF NEW YORK as Trustee Under the Pooling & Servicing Agreement Dated as of May 31, 1993 Series–B c/o Rosicki & Associates, P.C., Appellant

v.

William HARVEY and Ann L. Harvey.

The Bank of New York as Trustee Under the Pooling & Servicing Agreement Dated as of May 31, 1993 Series–B c/o Rosicki & Associates, P.C., Appellant

v.

William Harvey and Ann L. Harvey.

Superior Court of Pennsylvania.

Argued Oct. 3, 2006.

Filed July 2, 2007.

Kristina G. Murtha, Philadelphia, for appellant.

Mark S. Keenheel, Philadelphia, for appellees.

BEFORE: FORD ELLIOTT, P.J., BOWES, J. and McEWEN, P.J.E.

OPINION BY FORD ELLIOTT, P.J.:

¶ 1 These consolidated appeals arise from appellant's, the Bank of New York ("the Bank"),[1] attempt to fix the fair market value of a foreclosed property pursuant to the Deficiency Judgment Act, 42 Pa. C.S.A. § 8103. The Bank appeals two separate but related orders. The appeal at No. 47 EDA 2006 is taken from an order dated November 28, 2005, and entered on December 2, 2005, denying the Bank's petition to fix fair market value. The appeal at No. 48 EDA 2006 is taken from an order also dated November 28, 2005, and entered on December 2, 2005, granting appellees', William Harvey and Ann L. Harvey ("the Harveys"), petition to mark judgment satisfied. Finding no error, we affirm.

¶ 2 On March 30, 1993, the Harveys borrowed $170,000 from the Bank as evidenced by two Promissory Notes for $85,000 each. Each note was secured by a primary and a collateral mortgage. Promissory Note No. 71502678 was secured by a primary mortgage of a property located at 129 Houston Avenue, Glenside, Montgomery County ("the Montgomery Property"), which was also the family home, and by a collateral mortgage of a property located at 138 W. Logan Street, Philadelphia County ("the Philadelphia Property"). Promissory Note No. 71502686, on the other hand, was secured by a primary mortgage on the Philadelphia Property and a collateral mortgage on the Montgomery Property.

¶ 3 On April 6, 1998, the Harveys satisfied Promissory Note No. 71502678 and the two mortgages securing that note were subsequently marked satisfied and returned to the Harveys. As to Promissory Note No. 71502686, however, the Harveys eventually defaulted on their obligation. On October 23, 2001, a default judgment was entered against the Harveys in the amount of $65,340.97. The Bank instituted foreclosure proceedings against the Philadelphia Property and purchased the property at a sheriff's sale for $10,300. The sheriff's deed, vesting interest in the Bank, was recorded on May 29, 2002.

¶ 4 Thereafter, the Bank also instituted foreclosure proceedings against the Montgomery Property based upon the collateral mortgage that secured the defaulted Promissory Note. According to the Bank, it obtained judgment against the Montgomery Property on June 6, 2002. Thereafter, the Harveys proceeded to file serial bankruptcy petitions in order to forestall a sheriff's sale of the Montgomery Property by benefit of the automatic stay provisions of the Bankruptcy Code, 11 U.S.C.A. § 362. According to a stipulation, the bankruptcies were filed as follows:

(1.) Petition # 02–18572: filed 6/11/02, dismissed 12/6/02

(2.) Petition # 03–10515: filed 1/9/03, dismissed 2/18/03

(3.) Petition # 03–12888: filed 2/27/03, dismissed 7/25/03

(4.) Petition # 03–30920: filed 7/22/03, dismissed 11/19/03

---

1. To simplify our procedural history, we will uniformly use the term "the Bank" to refer to the party contracting with appellees, even where it was not the Bank of New York itself that was actually involved, but rather a predecessor in interest.

(\*) **Petition # 04–15367: filed 4/15/04, dismissed 9/10/04**

(5.) Petition # 04–17464: filed 5/28/04, dismissed 7/14/04

(6.) Petition # 04–32936: filed 9/23/04, dismissed 10/22/04

(7.) Petition # 04–35322: filed 11/15/04, dismissed 12/9/04

(8.) Petition # 05–10110: filed 1/3/05, dismissed 2/7/05

*See* Stipulation Pursuant to Order of August 8, 2005. Unlike the other bankruptcy petitions, Petition # 04–15367 was not filed by the Harveys, but by their son, Peter Harvey. According to the Bank, the Harveys deeded the Montgomery Property to their son and themselves on April 15, 2004. Thus, a bankruptcy petition filed by the son would have protected the Montgomery Property from sale under the automatic stay.

■ ¶ 5 On July 11, 2005, the Harveys filed a petition to mark the judgment satisfied, pursuant to the Deficiency Judgment Act, 42 Pa.C.S.A. § 8103, by the sale of the Philadelphia Property and by the Bank's failure to file a petition to fix fair market value of the Philadelphia Property within six months of the recordation of the deed conveying ownership to the Bank. The Deficiency Judgment Act reads, in pertinent part:

(a) **General rule.**—Whenever any real property is sold, directly or indirectly, to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment, interest and costs and the judgment creditor seeks to collect the balance due on said judgment, interest and costs, the judgment creditor shall petition the court to fix the fair market value of

the real property sold. The petition shall be filed as a supplementary proceeding in the matter in which the judgment was entered. If the judgment was transferred from the county in which it was entered to the county where the execution sale was held, the judgment shall be deemed entered in the county in which the sale took place.

. . . .

(d) **Action in absence of petition.**—If the judgment creditor shall fail to present a petition to fix the fair market value of the real property sold within the time after the sale of such real property provided by section 5522 (relating to six months limitation), the debtor, obligor, guarantor or any other person liable directly or indirectly to the judgment creditor for the payment of the debt, or any person interested in any real estate which would, except for the provisions of this section, be bound by the judgment, may file a petition, as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction, setting forth the fact of the sale, and that no petition has been filed within the time limited by section 5522 to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

42 Pa.C.S.A. § 8103(a) and (d).[2]

¶ 6 On July 28, 2005, the Bank responded by filing a petition to fix fair market value of the Philadelphia Property. As noted, the lower court entered two orders on December 2, 2005, granting the Har-

---

**2.** The six-month statute of limitations begins to run from the date the sheriff delivers the deed to the judgment creditor. 42 Pa.C.S.A. § 5522(b)(2). The Bank has not pleaded the

veys' petition to mark the judgment satisfied and denying the Bank's petition to fix fair market value of the Philadelphia Property on the basis that it was untimely filed. The Bank now appeals both orders.

¶ 7 According to the Bank, the decisions of the trial court failed to accord it the full six months to which it was entitled under the six-month statute of limitations for filing a petition to fix fair market value under the Deficiency Judgment Act. The Bank claims that case law indicates that it was entitled to an *uninterrupted* six-month period under 42 Pa.C.S.A. §§ 8103 and 5522 in which to file its petition to fix fair market value of the Philadelphia Property, and that because of the serial bankruptcy petitions filed by the Harveys, no such period existed. The Bank asserts then that pursuant to 11 U.S.C.A. § 108(c),[3] it had six months from the date that the final bankruptcy petition was dismissed, and the automatic stay terminated, February 7, 2005, to file its petition to fix fair market value of the Philadelphia Property.[4] Thus, the Bank contends that it had until August 7, 2005 to file its petition and that the July 28, 2005 filing was, therefore, timely.

¶ 8 We may quickly dispose of this matter. Simply stated, we hold that the periods of time that elapsed between the dismissal of each serial bankruptcy petition and the filing of the next must be counted toward the expiration of the six-month statute of limitations because the Bank could, in fact, have filed the petition to fix fair market value of the Philadelphia Property during any of these intervals. To rule otherwise would improperly augment the six-month period in which the Legislature has decided a judgment creditor must act.

¶ 9 Nor does case law require us to find otherwise as the Bank maintains. In support, the Bank cites *In re Smith*, 192 B.R. 397 (1996). In *Smith*, the United States Bankruptcy Court for the Western District of Pennsylvania indicated that the six-month period was intended to be an uninterrupted six months. The issue was rendered mere *dicta*, however, because the court also found that even if the interrupted intervals of time were totaled and included, less than six months had expired. Moreover, *Smith* is a decision of the United States Bankruptcy Court for the West-

---

date of actual delivery of the deed, but only the date upon which it was recorded, May 29, 2002. The recording of a deed constitutes *prima facie* evidence of delivery and raises a rebuttable presumption thereof. *In re Cray's Estate*, 353 Pa. 25, 44 A.2d 286 (1945). Since the Bank has only pleaded the date of recordation, we will consider this as the date of delivery of the deed.

3.  (c) Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, or against an individual with respect to which such individual is protected under section 1201 or 1301 of this title, and such period has not expired before the date of the filing of the petition, then such period does not expire until the later of—

(1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or

(2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

4.  The issue, as framed by the Bank, raises an implicit question as to whether the time that elapsed during the interstices between the dismissal of each bankruptcy petition and the filing of the next is chargeable against the six-month statute of limitations. We should also note that, by statute, the time during which the automatic stay of the Bankruptcy Code was in effect does not count against the six-month statute of limitations. *See* 42 Pa.C.S.A. § 5535(b).

ern District of Pennsylvania and is not binding on this court.

¶ 10 We find that 253 days elapsed during these intervals in which the Bank could have filed a petition to fix fair market value as to the Philadelphia Property, a number well in excess of six months.[5] Pursuant to 11 U.S.C.A. § 108(c)(2) (see footnote 3), the Bank had 30 days following the dismissal of the final bankruptcy petition on February 7, 2005, until March 9, 2005, to file its petition to fix fair market value on the Philadelphia Property.[6] The petition filed on July 28, 2005 was, therefore, untimely.

¶ 11 Moreover, even if the Bank's position were correct and it was entitled to an uninterrupted six-month period before the statute of limitations expired, we find that it did, in fact, receive such a period of time from the dismissal of the Harveys' fourth bankruptcy petition on November 19, 2003, and the filing of their fifth bankruptcy petition on May 28, 2004. Thus, even by the Bank's position, the statute of limitations expired no later than May 19, 2004.

¶ 12 The Bank, however, contends that this time period actually ended on April 15, 2002, when the Harveys' son, Peter, filed his bankruptcy petition. The Bank asserts that it was prohibited by the automatic stay arising from Peter Harvey's bankruptcy from filing a petition to fix fair market value of the Philadelphia Property. We disagree.

¶ 13 Peter Harvey was not a debtor to the obligation that underlies all of these mortgages. Moreover, Peter Harvey had no interest in the Philadelphia Property for which the Bank needed to petition to fix fair market value. The only possible effect that could accrue to the bankruptcy estate of Peter Harvey, which contained an interest in the Montgomery Property, would be a decrease in potential liability to that property and that bankruptcy estate from the lien represented by the judgment against the Harveys. Filing a petition to fix fair market value could only increase the value represented by the Philadelphia Property, which would then decrease the amount of the judgment against the Harveys, and the resultant lien against the Montgomery Property. Therefore, we do not regard such action as attempting to possess the property of the bankruptcy estate, or create, perfect, or enforce any lien against it, as prohibited by the automatic stay provisions of the Bankruptcy Code.

¶ 14 Accordingly, having found that the petition to fix fair market value of the Philadelphia Property was untimely filed, we will affirm the orders below.

¶ 15 Orders affirmed.

---

5. This figure includes intervals of 34 days between the first and second bankruptcies, 9 days between the second and third bankruptcies, 148 days between the fourth and Peter Harvey's bankruptcies, 13 days between Peter Harvey's and the sixth bankruptcies, 24 days between the sixth and seventh bankruptcies, and 25 days between the seventh and eighth bankruptcies. This calculation assumes, to the Bank's benefit, that Peter Harvey's bankruptcy would effect an automatic stay as to the Bank's ability to petition to fix fair market value of the Philadelphia Property.

6. Actually, because 191 days had accrued under these intervals when Peter Harvey's bankruptcy was dismissed on September 10, 2004, the Bank would have had 30 days from that date to file its petition. However, because no single 30–day period elapsed after that time because of the successive filing of subsequent bankruptcy petitions, March 9, 2005 marked the first time that 30 days was able to elapse.