## Peoples Neighborhood Bank v. Layo

C.P. of Lackawanna County, No. 12 CV 6669

*Andrew J. Katsock, III*, for plaintiff.
*George A. Reihner* and *Danielle M. Mulcahey*, for defendants.

NEALON, *J.*, Oct. 22, 2014—

## I. PROCEDURAL HISTORY

On November 13, 2012, plaintiff, Peoples Neighborhood Bank, formerly Peoples National Bank ("Peoples Bank"), instituted this ejectment action against defendant, Sheila M. Layo ("Layo"), seeking to evict her from a townhouse unit at 2916 McCarthy Street, Scranton, on the basis that Peoples Bank is the "record owner" of that property as a result of a sheriff's deed that was duly recorded on April 27, 2012. (Docket entry no. 1 at ¶¶ 3-4). In her responsive pleading to the ejectment complaint, Layo asserted a new matter pursuant to Pa.R.C.P. 1030, and averred that she was never "provided with notice of the mortgage foreclosure action or sheriff's sale as required by Pennsylvania law." (Docket entry no. 11 at ¶24). Layo

further alleged that Peoples Bank does not have paramount title to the property since the sheriff's sale was "a nullity and void" due to Peoples Bank's failure to comply with "the affidavit, notice and posting requirements of Pa.R.C.P. 3129.1 through 3129.3." (*Id.* at ¶ 13).

In addition, Layo has advanced a counterclaim under Pa.R.C.P. 1031 in which she incorporates the allegations and causes of action that she set forth in an earlier civil suit, which she commenced against Peoples Bank on August 16, 2012. (*Id.* at ¶¶ 36-40). Peoples Bank filed preliminary objections to Layo's counterclaim, and by memorandum and order dated October 17, 2013, visiting Senior Judge Harold Kane overruled those preliminary objections. (Docket entry nos. 13-16). On April 11, 2014, Peoples Bank sought leave of court to certify this case for trial over Layo's objection, and on April 11, 2014, Judge Robert A. Mazzoni granted Peoples Bank's motion pursuant to Lacka. Co. R.C.P. 214(d). (Docket entry nos. 20-22). On June 2, 2014, the Lackawanna County Court Administrator assigned this matter to the undersigned and scheduled a status conference for July 14, 2014. (Docket entry no. 25).

By order dated July 14, 2014, this matter was scheduled for a non-jury trial on September 15, 2014, and September 16, 2014. (Docket entry no. 26). On those dates, testimony was received from Paul Walsh, Sheila Layo, Steven Stranburg, and Steven Yankowski, and various exhibits were introduced into evidence. The parties filed their proposed findings of fact and conclusions of law on September 22, 2014, and later submitted a joint stipulation on October 3, 2014. (Docket entry nos. 31-32, 34). The transcripts of the non-jury trial were completed and filed on October 20, 2014, and this matter is ripe for a decision.

(Docket entry nos. 35-36).

In a bench trial, the trial judge acts as fact-finder and has the authority to make credibility determinations and to resolve conflicts in the evidence. *Haan v. Wells*, 2014 WL 5018462, at *9, 12 (Pa. Super. 2014); *Rizzo v. MSA. Inc.*, 18 Pa. D. & C. 5th 233, 244-245 (Lacka. Co. 2010), *aff'd*, 32 A.3d 830 (Pa. Super. 2011). When serving as the finder of fact, the trial judge is "in the sole position to observe the demeanor of the witnesses and assess their credibility." *Hirsch v. EPL Technologies, Inc.*, 910 A.2d 84, 88 (Pa. Super. 2006), *app. denied*, 591 Pa. 727, 920 A.2d 833 (2007). As a result, the trial judge in a non-jury trial is free to "believe all, part or none of the evidence presented." *Ruthrauff, Inc. v. Ravin. Inc.*, 914 A.2d 880, 888 (Pa. Super. 2006), *app. denied*, 599 Pa. 711, 962 A.2d 1197 (2008).

Additionally, "[j]udicial notice can be taken of pleadings and judgments in other proceedings where appropriate." *Krenzel v. Southeastern Pennsylvania Transportation Authority*, 840 A.2d 450, 454 n.6 (Pa. Cmwlth. 2003). "This is particularly so where, as here, the other proceedings involve the same parties." *Lycoming County v. Pennsylvania Labor Relations Bd.*, 943 A.2d 333, 335 n. 8 (Pa. Cmwlth. 2007). A court may also take judicial notice of established matters in publicly-available dockets for cases filed in its own jurisdiction. *See Deyarmin v. Consolidated Rail Corp.*, 931 A.2d 1, 15 n. 10 (Pa. Super. 2007), *app. denied*, 597 Pa. 706, 948 A.2d 805 (2008). The factual findings set forth in Section II below are based upon the trial evidence, which has been deemed to be credible and relevant, as well as those matters which may be judicially noticed.

## II. FINDINGS OF FACT

On October 25, 2007, Peoples Bank loaned Mountainside Commons, LLC ("Mountainside") $1,000,000.00 to finance the construction of seven townhouse units on the 2900 block of McCarthy Street in Scranton. Peoples Bank's loan to Mountainside was secured by an "Open-End Mortgage" granting Peoples Bank a security interest in the property at 2900 McCarthy Street, including any structures and improvements erected on that land. Richard Hallock ("Hallock") acted as the "settlement agent" at the Peoples Bank — Mountainside closing, as well as the title insurance representative for the transaction. Following the closing, Hallock filed the Peoples Bank — Mountainside "Open-End Mortgage and Security Agreement" with the Lackawanna County Recorder of Deeds on November 2, 2007.

After Mountainside completed the construction of townhouse Unit 1 on 2916 McCarthy Street, Layo entered into an agreement of sale to purchase Unit 1 from Mountainside for the sum of $287,500.00. In connection with her purchase of townhouse Unit 1, Layo agreed to make a down payment of $28,750.00 and to borrow the remaining $258,750.00 from Peoples Bank. Under her adjustable rate note dated August 20, 2008, Layo agreed to repay her $258,750.00 loan by making 360 monthly payments to Peoples Bank beginning on September 20, 2008. In order to consummate that transaction, Peoples Bank and Mountainside were required to execute a partial release agreement releasing townhouse Unit 1 and its accompanying land from the Open-End Mortgage and Security Agreement that was filed on November 2, 2007.

On August 20, 2008, Mountainside, Layo and Peoples

Bank participated in a closing with respect to Layo's purchase of townhouse Unit 1 for the contract sales price of $287,500.00. Layo also paid settlement charges totaling $8,159.25, comprised of $250.00 for document preparation, $1,798.75 for title insurance with Penn Title Insurance Company ("Penn Title"), $200.00 for Penn Title insurance endorsements 100, 300, 8.1 and 7.10, $35.00 for CPL, $115.50 for the recording fees for the deed, mortgage and partial release of open-end mortgage, $5,750.00 for her share of the realty transfer tax, and $14.00 for PIN certification. From the $287,500.00 purchase price that was paid to Mountainside, $150,000.00 was deducted for its "payoff of first mortgage loan" with Peoples Bank, and $5,750.00 was allocated to pay Mountainside's portion of the realty transfer tax. The Mountainside — Layo settlement statement identifies Hallock as the settlement agent for the closing and the title insurance agent for Penn Title.

The individuals in attendance at the Mountainside-Layo closing who later testified during the non-jury trial, did not provide sufficiently specific testimony as to the "delivery" of the deed to Layo. Layo testified that she signed her promissory note and mortgage with Peoples Bank, (Transcript of Proceedings ("T. P.") on 9/15/14 at pp. 49-50), but did not see any individual take possession of the deed, nor does she know who left the closing with the deed. (*Id.* at pp. 67, 79). Mountainside's principal, Steven Yankowski, stated that he recalled signing the deed and leaving it on the conference room table, but does not know who took custody of the deed. (T. P. on 9/16/14 at pp. 36, 48-49, 51). Peoples Bank's former branch manager, Steven Stranburg, merely recalled observing Hallock take the mortgage and deed at the conclusion of

the closing. (*Id.*, at pp. 4, 9, 20-21). No witness provided any testimony as to whether Hallock was instructed or agreed to provide the deed to Layo on August 20, 2008, or on some future date.

Unbeknownst to Layo and Peoples Bank, Hallock did not file the Peoples Bank — Mountainside partial release of open-end mortgage, the Mountainside — Layo deed, or the Peoples Bank — Layo mortgage, and instead absconded with the settlement funds that were provided to him to purchase Layo's title insurance and pay the transfer taxes, as well as the recording fees for the deed and mortgage.[1] According to the joint petition that was attested to and submitted by Hallock and the Office of Disciplinary Counsel in the disciplinary action instituted against Hallock in 2010, Hallock was to procure an owner's title insurance policy for Layo and a lender's title insurance policy for Peoples Bank from Penn Title. *Office of Disciplinary Counsel v. Hallock, supra,* "joint petition in support of discipline on consent pursuant to Pa.R.D.E. 215(d)" at ¶35 (admitted as plaintiffs Exhibit

---

1. On December 1, 2009, Hallock was charged with receiving stolen property and theft by unlawful taking related to funds that he had misappropriated from another closing, and following his plea of guilty to receiving stolen property, 18 Pa.C.S. § 3925(a), Hallock was sentenced by Judge Michael J. Barrasse on May 11, 2010, to an intermediate punishment sentence of six months to thirty months incarceration, which was suspended provided that Hallock served six months on house arrest. *Com. v. Hallock,* No. 09 CR 3217 (Lacka. Co.). The Office of Disciplinary Counsel also initiated disciplinary proceedings against Hallock based upon that theft, as well as his conversion of funds from three other individuals, including Layo. *See Office of Disciplinary Counsel v. Hallock,* No. 241 DB 2010 (Pa. Disc. Bd. Jan. 3, 2011). Hallock and the Office of Disciplinary Counsel executed a joint petition in support of discipline on consent, and by order dated March 2, 2011, the Supreme Court of Pennsylvania granted that petition and ordered "that Richard Hallock is suspended on consent from the Bar of this Commonwealth for a period of three years." *Office of Disciplinary Counsel v. Hallock,* No. 1699 Disciplinary Docket No. 3 (Pa. Mar. 2, 2011).

No. 12). Subsequent to the closing on August 20, 2008, "Peoples Bank was unsuccessful in attempting to obtain a copy of the lender's policy and related materials that Mr. Hallock was to have secured...as agent for Penn Title," and "[i]n mid-2009, Peoples Bank contacted Penn Title and contended that the Layo transaction had not closed, even though Peoples Bank had provided the financing." *Id.* at ¶¶38-39.

Within twelve months of the Mountainside — Layo closing, Steven Yankowski of Mountainside was advised by Peoples Bank's loan officer, Paul Walsh, that the Mountainside — Layo deed had not been filed and recorded with the Lackawanna County Recorder of Deeds. Mr. Walsh originally told Mr. Yankowski that Peoples Bank was "working on it," but later stated that Layo's unrecorded deed was "not [Peoples Bank's] problem." In late 2010, Layo explored the prospect of refinancing her loan at a lower interest rate with a different lender, and in the process, was informed by that lender that the Mountainside — Layo deed had not been filed with the Lackawanna County Recorder of Deeds. Upon contacting Peoples Bank regarding the absence of a recorded deed, Layo was directed to Peoples Bank's counsel who advised Layo that Peoples Bank was "working on it." While the deed and mortgage remained unrecorded, Peoples Bank continued to accept and deposit the monthly mortgage payments that were forwarded to it by Layo.

On July 6, 2011, Peoples Bank forwarded a certified mail letter to Mountainside stating that Mountainside was "in default for non-payment" of its note and mortgage with Peoples Bank, and that Peoples Bank had "elected to accelerate the entire principal with interest thereon." Peoples Bank demanded "immediate payment" of the

sum of "870,145.95, including principal of $848,988.18, interest of $20,517.83, late charges of $649.94, plus additional interest from July 5, 2011, in the sum of $144,349 [*sic*] per day until the date of payment in full." Mountainside failed to tender immediate payment of that aggregate amount to Peoples Bank.

On July 26, 2011, Peoples Bank filed a "complaint for confession of judgment" against Mountainside pursuant to the terms of the Peoples Bank — Mountainside note and mortgage "covering premises known as lands along McCarthy Street," as described in the "Open-End Mortgage and security agreement" that was recorded on November 2, 2007. The property described in the recorded open-end mortgage had included townhouse Unit 1 that was later purchased by Layo on August 20, 2008, following the execution of a partial release of that open-end mortgage by Peoples Bank and Mountainside. Although Layo was in possession of townhouse Unit 1 on July 26, 2011, and Peoples Bank sought to foreclose upon and gain possession of townhouse Unit 1 in the action that it instituted against Mountainside, Peoples Bank did not serve Layo with original process in that litigation.[2] (Docket entry no. 4 in No. 11 CV 4523).

On October 28, 2011, Peoples Bank filed a "motion to permit entry onto property" in No. 11 CV 4523 seeking access to the McCarthy Street property described in the open-end mortgage, and obtained an order on that date granting Peoples Bank authority to enter, inspect and winterize "the property known as Mountainside Commons, 2900 McCarthy Street." (Docket entry no. 2 in No. 11

---

2. In its "proposed post-trial findings of fact and conclusions of law," Peoples Bank refers to the suit that it filed against Mountainside on July 26, 2011, as "a foreclosure action." (Docket entry no. 31 at ¶ 29).

CV 4523). On November 9, 2011, Peoples Bank filed a praecipe for writ of execution against Mountainside in the amount of $870,145.95, and had the mortgaged property scheduled for a sheriff's sale on February 7, 2012. (Docket entry nos. 4-6 in No. 11 CV 4523). In anticipation of that sheriff's sale, Peoples Bank served written notice of the scheduled sale upon Mountainside, Mountainside's three principals, Steven Yankowski, Ronald Heurlin and Tanya E. Heurlin, the tenants of three Mountainside townhouse units, Dinesh K. and Kiran Sachdeva, 2910 McCarthy Street, Marion McNulty, 2912 McCarthy Street, and Mary Beth Zazzera, 2914 McCarthy Street, and Mountainside's known creditors or lienholders, Double M General Contractors, Inc., Scranton Sewer Authority, Lackawanna County Tax Claim Bureau, Lackawanna County Single Tax Office, City of Scranton Refuse Collection Department, Northeast Revenue Service, LLC, and NCC Commonwealth Financial. (Docket entry no. 34; Docket entry no. 10 in No. 11 CV 4523). Notwithstanding the fact that Layo had an unrecorded interest in the property that could be affected by the scheduled sheriff's sale, and that Peoples Bank had knowledge of Layo's unrecorded interest in that property, Peoples Bank did not similarly serve Layo with thirty (30) days written notice of the scheduled sheriff's sale. Nor did Peoples Bank have the sheriff post townhouse Unit 1 with a handbill containing the sheriff's sale information required by Pa.R.C.P. 3129.2(b).[3]

After Steven Yankowski filed a motion for a temporary stay of the sheriff's sale scheduled for February 3, 2012,

---

3. From the date of Layo's first mortgage payment to Peoples Bank in September 2008 through February 1, 2012, Layo was current with her monthly mortgage payment obligations to Peoples Bank. As of February 1, 2012, Layo's monthly mortgage payments under her adjustable rate note with Peoples Bank were $1,657.00.

the sheriff's sale was postponed and rescheduled for March 20, 2012. (Docket entry nos. 11, 14 in No. 11 CV 4523). Two days before the rescheduled sheriff's sale, Layo first became aware of the sheriff's sale upon being advised of the same by a health care worker at a nursing home located on McCarthy Street. Following consultation with her brother, who had been a contractor for the Mountainside townhouse development project, Layo filed a *pro se lis pendens* against Mountainside and Peoples Bank on March 19, 2012, with respect to the property located at 2916 McCarthy Street. (Docket entry nos. 1-2 in 12 CV 1771).

On March 19, 2012, Peoples Bank and Steven Yankowski filed a stipulation that was executed by their counsel in the Bank's foreclosure action against Mountainside, and agreed to permit the scheduled sheriff's sale to proceed forward on March 20, 2012, subject to the terms and conditions of their stipulation. (Docket entry no. 14 in No. 11 CV 4523). In the stipulation, Peoples Bank agreed that "[a] sherriff's (*sic*) execution sale is scheduled in this matter for March 20, 2012, on real property located on McCarthy Street in Scranton, *which is improved with six (6) townhouse units*," and that Peoples Bank and Mr. Yankowski had stipulated "that the sherriff's (*sic*) sale scheduled in the above-captioned matter scheduled for March 20, 2012, shall be permitted to go forward." (*Id.* at ¶10-11) (emphasis added). The sheriff's sale was conducted on the following day, and in consideration of Peoples Bank's payment of $4,862.42 representing county taxes and sheriff's sale costs, a sheriff's deed was issued to Peoples Bank for the McCarthy Street property on April 23, 2012. (Docket entry nos. 15-16 in No. 11 CV 4523). The sheriff's deed conveying that land to Peoples

Bank was filed with the Lackawanna County Recorder of Deeds on April 27, 2012. (Joint-Pre-Trial Order filed as Docket entry no. 28 at ¶ 2(i)). Peoples Bank thereafter sold townhouse units 2, 3, 4, 5, 6 and 7 to third parties. (*Id.* at ¶2(j)).

Subsequent to the sheriff's sale of the McCarthy Street property on March 20, 2012, Layo ceased making monthly mortgage payments to Peoples Bank. Although Peoples Bank was cognizant of the fact that the Mountainside — Layo deed and Peoples Bank — Layo mortgage had not been recorded, it nonetheless forwarded a "Notice of Intention to Foreclose Mortgage" to Layo on May 1, 2012. (Docket entry no. 1, Exhibit I in No. 12 CV 5007). In its notice to Layo, Peoples Bank advised Layo that her mortgage was "in SERIOUS DEFAULT because you have not made your monthly payments," and that if Layo did not cure the default within thirty days, Peoples Bank would "exercise [its] right to accelerate the mortgage payments." (*Id.* at p. 1) (emphasis in original). Peoples Bank stated that "[i]f full payment of the amount of default is not made within thirty (30) days, we also intend to instruct our attorneys to start a lawsuit to foreclosure *your mortgaged property*," which, if foreclosed, "*will be sold by the Sheriff* to pay off the mortgage debt." (*Id.*) (emphasis added).

In its notice dated May 1, 2012, Peoples Bank further represented to Layo that if a foreclosure proceeding was commenced against her, "you still have the right to cure the default and prevent the sale at any time up to one hour before the Sheriff's sale." (*Id.* at p. 2). Peoples Bank informed Layo "that the earliest date that a Sheriff's sale could be held would be approximately July 3, 2012." (*Id.*). Finally, Peoples Bank admonished Layo "that a *Sheriff's sale will end your ownership of the mortgaged property*

*and your right to remain in it,*" and that if she "continue[d] to live in the property *after the Sheriff's sale*, a lawsuit could be started to evict you." (*Id.*) (emphasis added). Peoples Bank has never instituted a mortgage foreclosure action against Layo, nor has it ever notified her of such a sheriff's sale of townhouse Unit 1.

On August 16, 2012, Layo filed a civil action against Peoples Bank, Ohio Bar Title Insurance Company, formerly Penn Title Insurance Company ("Penn Title"), and Hallock, which is docketed to No. 12 CV 5007 (Lacka. Co.). Layo's complaint in that suit averred four causes of action with respect to Peoples Bank. First, asserting that Peoples Bank had "failed to acknowledge [her] equitable interest" and duly notify her of the sheriff's sale of township Unit 1, Layo advanced a claim for "specific performance" and sought to (1) enjoin Peoples Bank from selling townhouse Unit 1, and (2) compel Peoples Bank to convey Unit 1 to her for $1.00. (Docket entry no. 1 in No. 12 CV 5007 at ¶¶ 65-71). Count II of Layo's complaint charged Peoples Bank with negligence for failing to comply with the "standard of care in the banking industry" and the federal and state law requirements imposed upon mortgagors, whereas Count III alleged a cause of action for breach of fiduciary duty. (*Id.* at ¶¶ 72-77). Last, Layo asserted a claim under the Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 et. seq., and averred that Peoples Bank engaged in "unfair or deceptive acts or practices," including "fraudulent or deceptive conduct which create[d] a likelihood of confusion or misunderstanding" in contravention of 73 P.S. § 201-2(4)(xxi). (Id at ¶¶ 78-80).

Peoples Bank did not commence a mortgage foreclosure action against Layo or consummate a sheriff's sale against

her, as represented in its written notice to Layo dated May 1, 2012, but nonetheless filed the instant ejectment action against Layo on November 13, 2012, seeking to evict her from townhouse Unit 1. (Docket entry no. 1 in No. 12 CV 6669). Fifteen days later, Peoples Bank filed preliminary objections in Layo's civil suit, and sought to dismiss Layo's claims for specific performance, negligence and breach of fiduciary duty. (Docket entry no. 9 in No. 12 CV 5007). Peoples Bank demurred to Layo's specific performance claim on the grounds that "[s]pecific performance is an equitable remedy that may only be granted to a buyer where a contract for the sale of land is breached by the seller," but Layo had "not alleged that she had any contract with Peoples [Bank] which was not fully performed by Peoples [Bank]." (*Id.* at ¶¶ 7, 9). Peoples Bank also sought to dismiss Layo's negligence claim based upon the gist of the action doctrine and her breach of fiduciary duty theory since "[u]nder Pennsylvania law, a mortgagee does not stand as a fiduciary to a mortgagor simply due [to] the extension of a mortgage to the mortgagor." (*Id.* at ¶¶ 11-13, 19-20). In the alternative, Peoples Bank maintained that Layo's "allegations of negligence [we]re not sufficiently specific in order to inform Peoples [Bank] as to what actions allegedly were negligent." (*Id.* at ¶15).

On December 21, 2012, visiting Senior Judge Harold Thomson, Jr., summarily sustained, without further explanation, Peoples Bank's demurrer to Layo's causes of action for specific performance and breach of fiduciary duty. (Docket entry no. 17 in No. 12 CV 5007). Although Peoples Bank's demurrer to Layo's negligence claim was overruled, its motion to strike for lack of specificity was sustained, and Layo was directed to file an amended complaint. (*Id.*). Layo timely filed an amended complaint

and not only renewed her negligence and UTPCPL claims, but also asserted a cause of action for breach of contract. (Docket entry no. 18 in No. 12 CV 5007). Peoples Bank demurred to Layo's negligence and breach of contract claims, and by Order dated May 1, 2013, Judge Trish Corbett sustained Peoples Bank's preliminary objections and directed Layo to file another amended complaint. (Docket entry nos. 18-19, 24).

Layo filed a second amended complaint which alleged causes of action against Peoples Bank for breach of contract, unjust enrichment, fraud, negligent misrepresentation, fraudulent concealment, UTPCPL violations, intentional infliction of emotional distress, breach of the implied covenant of good faith and fair dealing, and failure to adequately train and supervise employees. (Docket entry no. 25 in No. 12 CV 5007 at ¶¶5-53). Peoples Bank again filed preliminary objections, and on October 2, 2013, visiting Senior Judge Peter J. O'Brien overruled the preliminary objections to Layo's breach of contract and unjust enrichment claims, but sustained the demurrers to Layo's claims for fraud, negligent misrepresentation, fraudulent concealment, intentional infliction of emotional distress, breach of implied covenant of good faith and fair dealing, and failure to adequately train and supervise employees. (Docket entry no. 30 in No. 12 CV 5007).

Layo's claims against Peoples Bank for breach of contract, unjust enrichment, and violations of the UTPCPL remain pending in her civil suit. In her breach of contract claim, Layo contends that Peoples Bank breached its obligations under the note, mortgage and settlement documents by (a) collecting monthly mortgage payments when it knew that no deed or mortgage had been recorded, (b) forwarding its notice of intention to

foreclose on Layo's mortgage even though it knew that the mortgage had not been properly recorded, (c) "continuing to telephone and write [Layo] that it intended to foreclose on the 'mortgage' to her property after the premises had been judicially foreclosed upon" and sold, and (d) failing to timely inform Layo that her deed and mortgage had not been recorded upon learning of that fact in 2009. (Docket entry no. 25 in No. 12 CV 5007 at ¶¶ 5-6). Layo seeks to recover as compensatory damages the monies that she has paid to Peoples Bank. (*Id.* at pp. 5-6). In her cause of action predicated upon the UTPCPL, Layo seeks to recover those actual damages, as well as treble damages pursuant to 73 P.S. § 201-9.2. (*Id.* at ¶¶ 40-41).

On June 20, 2014, Peoples Bank filed a petition to strike Layo's *lis pendens* in No. 12 CV 1771, and alleged that "[b]ecause [Layo's] remaining claims [in her civil suit] are for only monetary damages, the *lis pendens* must be stricken" as Layo "has no equitable claim for title to the property." (Docket entry no. 10 in No. 12 CV 1771 at ¶¶ 10, 14). Oral argument on Peoples Bank's petition to strike was conducted on August 14, 2014. (Docket entry no. 11 in No. 12 CV 1771). Four days later, Layo filed a "Complaint to Quiet Title" in the *lis pendens* proceeding seeking "a declaration that the title to the subject land and real property is vested in [Layo] and that [Peoples Bank] be declared to have no estate, right, title or interest in the subject property." (Docket entry no. 14 in No. 12 CV 1771 at ¶ 7). After Layo and Peoples Bank filed supplemental briefs regarding the quiet title complaint, (Docket entry nos. 16-17 in No. 12 CV 1771), an Order was issued on September 11, 2014, deferring "any ruling on the petition to strike the *lis pendens* and the complaint to quiet title... until the conclusion of the non-jury trial in the ejectment

action." (Docket entry no. 18 in No. 12 CV 1771 at p. 3). With the benefit of the foregoing procedural history and factual findings, the merits of Peoples Bank's ejectment claim will be addressed.

## III. DISCUSSION

### (A) EJECTMENT BURDEN OF PROOF

Peoples Bank seeks to eject Layo from townhouse Unit 1, 2916 McCarthy Street, Scranton. "Ejectment is an action filed by a plaintiff who does not possess the land but has the right to possess it, against a defendant who has actual possession." *Siskos v. Britz*, 567 Pa. 689, 699, 790 A.2d 1000, 1006 (2002). "The purpose of an ejectment action as opposed to quiet title is not to determine the relative and respective rights of all potential title holders, but rather the immediate rights between plaintiff and defendant involved in that particular litigation." *Wells Fargo Bank. N.A. v. Long*, 934 A.2d 76, 78 (Pa. Super. 2007) (quoting *Siskos, supra*); *Fell Charter School, Inc. v. Carbondale Area School District*, 2007 WL 8076746, at *3 (Lacka. Co. 2007). The plaintiff in an ejectment action bears the burden of proving by a preponderance of the evidence that the plaintiff is entitled to immediate exclusive possession based upon the plaintiff's paramount title. *Riverwatch Condominium Owners Association v. Restoration Development Corp.*, 980 A.2d 674, 681-682 (Pa. Cmwlth. 2009), *app. denied*, 603 Pa. 711, 985 A.2d 220 (2009); *Community Bank & Trust Co. v. Marier. Inc.*, 2011 WL 10948329, at *4 (Lacka. Co. 2011). Relief may be secured in an ejectment action only on the strength of plaintiff s own title, not the weakness of defendant's title. *Riverwatch Condominium Owners Association*, 980 A.2d at 682; *Moore v. Duran*, 455 Pa. Super. 124, 139, 687 A.2d

822, 829-830 (1997), *app. denied*, 549 Pa. 703, 700 A.2d 442 (1997); *Durdach v. Revta*, 2011 WL 7272290, at *3 (Lacka. Co. 2011), *aff'd*, 64 A.3d 268 (Pa. Super. 2013); *Ciccone v. Sposito*, 104 Lacka. Jur. 389, 397 (2003).

Peoples Bank contends that it is entitled to immediate and exclusive possession of townhouse Unit 1 since it acquired ownership of that property by virtue of its duly recorded sheriff's deed conveying title to 2900 McCarthy Street and any structures erected on that land. (Docket entry no. 31 at ¶¶ 20-27). Layo alleges, albeit without citation to any statutory or decisional authority, that she "is the equitable, lawful and legal owner of the subject premises." (Docket entry no. 30 at ¶19). Layo alternatively argues that she was not served with original process in Peoples Bank's action against Mountainside, nor was she furnished with the requisite notice of the sheriff's sale pursuant to Pa.R.C.P. 3129.1 and 3129.2, as a result of which the sheriff's deed "is a nullity and void" as to townhouse Unit 1. (*Id.* at ¶¶ 5, 7-8). Thus, a determination must be made as to whether Peoples Bank satisfied the notice and service of process requirements for an enforceable judgment and an effective sheriff's sale.

(B) NOTICE OF JUDGMENT AND SHERIFF'S SALE

With regard to sheriff's sales in Pennsylvania, "[t]he notice requirements of Pa.R.C.P. 3129.1, 3129.2, and 3129.3 were intended to protect fundamental rights of due process by insuring that persons with an interest in real estate would receive adequate notice before being deprived of their property." First *Eastern Bank. N.A. v. Campstead, Inc.*, 432 Pa. Super. 241, 245, 637 A.2d 1364, 1366 (1994). In addition to compliance with the procedures set forth in Rules 3129.1 — 3129.3, the notice

of the sheriff's sale must also be reasonably calculated to provide actual notice of a foreclosure sale and to afford adequate opportunity to present timely objections. *See RTC Mortgage Trust v. Fry*, 556 Pa. 603, 607, 730 A.2d 476, 478 (1999).

Rule 3129.1 addresses the affidavit which must be filed by a plaintiff seeking to sell real property upon a writ of execution, and mandates that the affidavit must set forth, *inter alia*, the name and address of every person "who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge." Pa.R.C.P. 3129.1(b)(4). Pursuant to Pa.R.C.P. 3129.2(a) and (c), all individuals identified in the Rule 3129.1 affidavit must be furnished with written notice of the sheriff's sale "at least thirty days before the sale." *See Fleet Consumer Discount Company v. Graves*, 33 F.3d 242, 249-250 (3d Cir. 1994) (under Pa.R.C.P. 3129.1(b) (4) and 3129.2(a) and (c), lender was required to furnish thirty days notice of sheriff's sale to every person having an interest in the property, that was "not of record" and of which the lender had actual or constructive notice.). To satisfy due process requirements, the written notice must "be reasonably calculated to inform interested parties of the pending action, and the information necessary to provide an opportunity to present objections." *M & T Mortgage Corp. v. Keesler*, 826 A.2d 877, 880 (Pa. Super. 2003), *app. denied*, 579 Pa. 693, 856 A.2d 835 (2004); *Boyer v. Walker*, 714 A.2d 458, 462 (Pa. Super. 1998).

Rule 3129.2(a) and (b) further require that "handbills shall be posted by the sheriff...upon the property at least thirty days before the sale, and shall include (1) a brief description of the property to be sold, its location, any improvements, the judgment of the court on which

the sale is being held, the name of the owner or reputed owner, and the time and place of sale, and (2) a notice directed to all parties in interest and claimants that a schedule of distribution will be filed by the sheriff on a date specified by the sheriff not later than thirty days after the sale and that distribution will be made in accordance with the schedule unless exceptions are filed thereto within ten days after the filing of the schedule." Pa.R.C.P. 3129.2(b)(1)-(2). The plaintiffs failure to comply with the notice requirements of Rules 3129.1 and 3129.2 renders the sheriff's sale defective, and warrants "anew sale with notice to all interested parties in accordance with the applicable Rules of Civil Procedure," even if the objector "learned of the sheriff's sale at the proverbial eleventh hour" and a representative of that objector was present at the sale. *Campstead, Inc.*, 432 Pa. Super, at 247, 637 A.2d at 1367. *See also Gambler v. Huvett*, 451 Pa. Super. 351, 358-359, 679 A.2d 831, 834-835 (1996) (proper remedy for lack of proper notice is to vacate sheriff's sale and order that sale be rescheduled following proper notice).

The credible evidence established that Peoples Bank knew as early as mid-2009 that Layo's interest in townhouse Unit 1 was "not of record" as a result of Hallock's failure to file the Mountainside-Layo deed with the recorder of deeds. Yet, when Peoples Bank filed its Rule 3129.1 affidavit more than two years later in *Peoples Neighborhood Bank v. Mountainside Commons, LLC*, *supra*, it did not identify Layo as a "person who has any interest in that property not of record which may be affected by the sale and of which the plaintiff has knowledge," as required by Pa.R.C.P. 3129.1(b)(4). (Docket entry no. 10 in no. 11 CV 4523). As a consequence of Peoples Bank's inexplicable omission of Layo from its Rule 3129.1

affidavit, Peoples Bank neglected to provide Layo with thirty days written notice of the scheduled sheriff's sale. *See* Pa.R.C.P. 3129.2(c) (stating that "written notice shall be prepared by the plaintiff...and shall be served at least thirty days before the sale on all persons whose names and addresses are set forth in the affidavit required by Rule 3129.1."). To compound that notice deficiency further, Peoples Bank identified and furnished thirty days written notice to every other townhouse unit occupant, even though they were mere tenants who had not ostensibly purchased their units as Layo had done on August 20, 2008. (Docket entry no. 34). Last, Peoples Bank violated Rule 3129.2(a) and (b) by failing to have the sheriff post a handbill on townhouse Unit 1 advising Layo of the time and place of the sheriff's sale at least thirty days before the sale.[4] *See* Pa.R.C.P. 3129.2(a), (b)(1)-(2).

Perhaps more importantly, the underlying judgment secured by Peoples Bank in *Peoples Neighborhood Bank v. Mountainside Commons. LLC*, was not effective as to Layo due to Peoples Bank's failure to comply with the service of process requirements set forth in Rule 410(b)(1). Although styled as a "complaint for confession of judgment," the relief sought by Peoples Bank in no. 11 CV 4523 included foreclosure upon, title to, and possession of the townhouse units located at 2900 McCarthy Street. (Docket entry no. 1 in no. 11 CV 4523 at ¶¶ 4-5 and Exhibits B, C). Rule 410 governs the service of original process in "actions involving title to, interest in, possession of, or charges or liens upon real property," Pa.R.C.P. 410(a),

---

4. Peoples Bank's counsel in this ejectment action did not represent Peoples Bank in conjunction with the Mountainside — Layo closing, the litigation against Mountainside to foreclose upon 2900 McCarthy Street and gain possession of that property, or the sheriff's sale that was conducted in No. 11 CV 4523.

and provides that "[i]f in an action involving an interest in real property the relief sought is possession or mortgage foreclosure, original process also shall be served upon any person not named as a party who is found in possession of the property." Pa.R.C.P. 410(b)(1). If service of original process is not made upon a non-party in possession of the mortgaged property, the resulting defect in service deprives the court of jurisdiction or authority to enter the judgment. *Meritor Mortgage Corp. v. Henderson*, 421 Pa. Super. 339, 341-342, 617 A.2d 1323, 1325 (1992).

In the case *sub judice*, Peoples Bank knew that Layo was in possession of townhouse Unit 1 at the time it commenced no. 11 CV 4523 seeking to enter judgment against Mountainside, to schedule a sheriff's sale of 2900 McCarthy Street upon a writ of execution, and to gain possession of that real estate and the townhouse units constructed on it. Furthermore, when Peoples Bank instituted no. 11 CV 4523 on July 26, 2011, it was actively collecting mortgage payments from Layo even though it knew for two years that her deed and mortgage had not been filed. As a result, it was incumbent upon Peoples Bank to serve Layo with original process in no. 11 CV 4523. *See* Pa.R.C.P. 410(b)(1). Consequently, the credible evidence demonstrated that Peoples Bank did not satisfy the service and notice requirements of Rules 410(b)(1), 3129.1(b)(4) and 3129.2(a), (b) and (c).

Based upon Peoples Bank's failure to comply with Rules 410(b)(1), 3129.1(b)(4) and 3129.2(a)-(c) prior to obtaining judgment and scheduling the sheriff's sale in no. 11 CV 4523, both the judgment and the sheriff's sale are defective and void as to Layo. The fact that Layo fortuitously learned of the impending sale two days beforehand does not negate or cure Peoples Bank's notice

infirmities. *See Campstead, Inc., supra.* Nevertheless, Peoples Bank argues that Layo's collateral attack on the sheriff's sale is untimely since Layo did not challenge the sheriff's sale before delivery of the sheriff's deed to Peoples Bank. Hence, before determining whether Peoples Bank is entitled to ejectment relief, the timeliness of Layo's notice attacks must be addressed.

### (C) TIMELINESS OF CHALLENGES TO ENTRY OF JUDGMENT AND SHERIFF'S SALE

Pa.R.C.P. 3132 entitles "any party in interest" to seek to set aside a sheriff's sale by filing a petition "before delivery...of the sheriff's deed," whereas Pa.R.C.P. 3135(a) affords an objecting party twenty days to file exceptions before the sheriff executes a sheriff's deed. "Taken together, Rule 3132 and 3135(a) make clear a party must raise a challenge to a sheriff's sale within a period of time after the sale, but before the deed is delivered." *Mortgage Electronic Registration Systems, Inc. v. Ralich*, 982 A.2d 77, 80 (Pa. Super. 2009), *app. denied*, 606 Pa. 650, 992 A.2d 889 (2010). However, "[a] sheriff's sale may be set aside after delivery of the sheriff's deed based on fraud or lack of authority to make the sale." *Id.*

Peoples Bank's actions before and after the sheriff's sale on March 20, 2012, provided a reasonably prudent person in Layo's position with cause to believe that it was unnecessary to challenge that sheriff's sale since it appeared to be inapplicable to townhouse Unit 1. In anticipation of the sheriff's sale, Peoples Bank did not have Layo's unit posted by the sheriff with a handbill pursuant to Pa.R.C.P. 3129.2(b). Although Peoples Bank identified every other occupant of a townhouse unit on 2900 McCarthy Street in its Rule 3129.1 affidavit, and thereafter served notice

of the scheduled sheriff's sale upon those townhouse unit tenants, it neglected to similarly identify and serve Layo despite the fact that Peoples Bank was cognizant of her possession of townhouse Unit 1 and had continued to accept and deposit her mortgage payments relative to that unit. Additionally, the stipulation filed by Peoples Bank on March 19, 2012, affirmatively represented that it sought to subject 2900 McCarthy Street and "six (6) townhouse units" to a sheriff's sale on March 20, 2012. (Docket entry no. 14 in no. 11 CV 4523 at ¶¶10-11). The totality of those actions and representations by Peoples Bank indicated to Layo and the public that Peoples Bank merely sought to foreclose upon the six townhouse units which had not been sold by Mountainside to third parties.

Even subsequent to the sheriff's sale on March 20, 2012, Peoples Bank's written communications to Layo reflected that she continued to own townhouse Unit 1. On May 1, 2012, Peoples Bank forwarded a notice to Layo asserting that she had failed to make her last three monthly payments, and advising her that if she failed to pay the full amount of the default, it would instruct its counsel "to start a lawsuit to foreclose your mortgaged property." (Docket entry no. 1, Exhibit I in no. 12 CV 5007). Layo was further informed by Peoples Bank that if such a foreclosure action was instituted against her, her townhouse unit "*will* be sold by the sheriff to pay off the mortgage debt" and the "sheriff's sale *will* end your ownership of the mortgaged property and your right to remain in it." (*Id.* at pp. 1-2) (emphasis added). To date, Peoples Bank has not filed such a mortgage foreclosure action against Layo, nor has it properly notified her of a sheriff's sale of townhouse Unit 1.

An untimely "attack on a sheriff's sale usually cannot

be made in a collateral proceeding," and "[a]n ejectment action is a proceeding collateral to that under which the land was sold." *Dime Savings Bank v. Greene*, 813 A.2d 893, 895 (Pa. Super. 2002). However, if a non-party is not served with proper notice under Pa.R.C.P. 410(b)(1), the court lacks authority to enter judgment in the action involving title to, interest in, or possession of real property, and "[i]t is never too late to attack" such a judgment for want of authority. *Henderson*, 421 Pa. Super. at 344, 617 A.2d at 1326 (quoting *Vichosky v. Boucher*, 162 Pa. Super. 598, 600, 60 A.2d 381, 382 (1948)). Moreover, where the underlying judgment is void, "the sheriff's sale which follows is a nullity." *Greene, supra.* In that event, the judgment entered and the resulting sheriff's sale "can be attacked collaterally in the mortgagee's action in ejectment to recover possession of the mortgaged premises" from the person who is in possession of that property. *Henderson*, 421 Pa. Super. at 344-345, 617 A.2d at 1326 ("[W]hen the trial court held that such a defense could not be raised in the ejectment action, it committed legal error."). *Accord Greene, supra* ("A judgment which is void can not support an ejectment action and may be asserted as a defense in the ejectment proceeding.").

Peoples Bank's failure to comply with Pa.R.C.P. 410(b)(1), 3129.1(b)(4) and 3129.2(a)-(b) deprived the court of the authority to enter judgment and the sheriff of the power to consummate the sheriff's sale on March 20, 2012. Therefore, Layo may collaterally attack the judgment and sale in this ejectment proceeding even after the delivery of the sheriff's deed to Peoples Bank. As a result, Peoples Bank's assertion that Layo's service and notice challenges are time-barred is without merit.

## (D) REQUEST FOR EJECTMENT RELIEF

As the party seeking to eject Layo from townhouse Unit 1, Peoples Bank has the burden of proving its entitlement to immediate and exclusive possession of that unit. To secure that ejectment relief, Peoples Bank must establish by a preponderance of the evidence that it has paramount title to townhouse Unit 1. *See Riverwatch Condominium Owners Association*, 980 A.2d at 681-682. The gist of Peoples Bank's "paramount title" claim is that it is the "record owner" of that unit since the sheriff's deed dated April 23, 2012, was filed and recorded with the Lackawanna County recorder of deeds on April 27, 2012, while Layo's deed to townhouse Unit 1 has never been recorded.

The Pennsylvania recording statutes, 21 P.S. §§ 351 and 444, require all deeds of conveyance to be acknowledged and recorded in the office for the recording of deeds in the county where the property is located within ninety days of the execution of the deed. *See Sabella v. Appalachian Development Corp.*, 2014 WL 5316625, at *9 n. 4 (Pa. Super. 2014) (quoting 21 P.S. § 351); *Roberts v. Estate of Pursley*, 718 A.2d 837, 841 (Pa. Super. 1998) (quoting 21 P.S. § 444), *app. denied*, 559 Pa. 706, 740 A.2d 234 (1999). The recording of a deed serves to provide public notice of the title holder of the property. *HSBC Bank USA. N.A. v. Lackawanna County Tax Claim Bureau*, 2014 WL 3805796, at *6 n. 9 (Pa. Cmwlth. 2014); *Poffenberger v. Goldstein*, 776 A.2d 1037, 1042 (Pa. Super. 2001). The foregoing recording statutes are intended to protect *bona fide* purchasers against "deceptious appearance of title," and both statutes declare that an unrecorded deed is deemed void as to any subsequent *bona fide* purchaser. *Poffenberger. supra*; *Roberts, supra*.

The passage of title to property becomes legally

operative upon the execution and delivery of a deed of conveyance. *See In re Herbert's Estate*, 356 Pa. 107, 111-112, 51 A.2d 753, 756 (1947). "The recording of a deed constitutes *prima facie* evidence of delivery and raises a rebuttable presumption thereof." *Bank of New York v. Harvey*, 928 A.2d 325, 327 n. 2 (Pa. Super. 2007), *app. denied*, 595 Pa. 710, 939 A.2d 889 (2007). However, "recording of a deed is not essential to establish its validity; title to real estate may be passed by delivery of the deed without recording it." *Upper Tulpehocken Township v. Berks County Board of Assessment Appeals*, 842 A.2d 1041, 1044 (Pa. Cmwlth. 2004); *Sovereign Bank v. Harper*, 449 Pa. Super. 578, 592, 674 A.2d 1085, 1092 (1996), *app. denied*, 546 Pa. 695, 687 A.2d 379 (1996).

The limited testimony presented with respect to the Mountainside — Layo closing on August 20, 2008, is insufficient to establish "delivery" of the deed to Layo or her agent. Layo never saw the deed or witnessed anyone take possession of it. (T.P. 9/15/14 at pp. 67, 79). The seller's principal observed the deed on the conference room table, but does not know who took custody of the deed at the closing. (T. P. 9/16/14 at pp. 36, 48-49, 51). Although Peoples Bank's branch manager testified that Hallock departed the closing with the mortgage and deed, (*Id.* at pp. 9, 20-21), neither he nor any other witness provided any testimony regarding any instructions that may have been provided to Hallock relative to delivery of the deed.

Delivery of a deed may effectively result in the transfer of title if it is provided to a third party with specific instructions to deliver it to the grantee "then or at some future time" following "the happening of a specified contingency." *Fiore v. Fiore*, 405 Pa. 303, 306, 174 A.2d 858, 859-860 (1961); *In re Padezanin*, 937 A.2d 475, 480

(Pa. Super. 2007). "However, delivery is not accomplished by the mere handing of the executed deed to a stranger." *Fiore*, 405 Pa. at 306, 174 A.2d at 860. Similarly, "the mere handing of the executed deed, without more, to a third person who is an agent of the grantee is ineffective." *In re Padezanin, supra* (quoting *Fiore, supra*).

Layo has steadfastly maintained that Hallock did not represent her in connection with the Mountainside — Layo transaction, and she has repeatedly denied that Hallock acted as her agent at the closing on August 20, 2008. (T.P. 9/15/14 at pp. 48-49, 62-63, 65, 69; Docket entry no. 11 at ¶ 37, Exhibit 1 at ¶ 14). Based upon Layo's persistent denial of any attorney — client relationship with Hallock, his possession of the deed on August 20, 2008, did not constitute "delivery" of the deed to Layo absent "an express and definite instruction that the deed [wa]s to be given to [Layo] then or at some future time."[5] *Fiore, supra*; *In re Padezanin, supra*. Since the non-jury trial record is completely devoid of any such proof, a finding cannot be made that the deed was delivered to Layo and that title to townhouse Unit 1 passed to her notwithstanding the fact that the deed was never recorded.

Nevertheless, for the reasons stated in Section III(B) and (C) above, the sheriff's sale of 2900 McCarthy Street

---

5. The Supreme Court of Pennsylvania has established the "Pennsylvania Lawyers Fund for Client Security," which is subsidized by "active annual" fees that are paid by all practicing attorneys in this Commonwealth. *See* Pa. R.D.E., Rule 502, 42 Pa.C.S.A. The fund is authorized to pay up to $100,000.00 to any claimant who suffers a "reimbursable loss" that is caused by "dishonest conduct," including any theft, embezzlement or conversion of money, by any member of the Pennsylvania Bar who represented the claimant. *See* Pa.R.D.E. Rules 511-514, 521, 42 Pa. C.S.A. If Hallock had represented Layo at the Mountainside — Layo closing, Layo would arguably be entitled to file a claim with the Pennsylvania Lawyers Fund for Client Security.

on March 20, 2012, was not valid or effective as to Layo or townhouse Unit 1. Peoples Bank failed to comply with Rules 410(b)(1), 3219.1(b)(4) and 3129.2(a)-(c) in securing the judgment and scheduling the resulting sheriff's sale in no. 11 CV 4523. Furthermore, the order that was issued by Judge Carmen D. Minora on March 19, 2012, authorizing the sheriff's sale on March 20, 2012, was predicated upon the stipulation that was prepared, executed and filed by Peoples Bank attesting that "six (6) townhouse units" were subject to the sheriff's sale, even though seven (7) units were actually erected on 2900 McCarthy Street. Due to these deficiencies, Peoples Bank must schedule and conduct a new sheriff's sale of townhouse Unit 1 in compliance with the foregoing Rules of Procedure. *See Campstead. Inc.*, *supra*; *Gambler*, *supra*. In the interim, Peoples Bank has not established its paramount title or right to immediate and exclusive possession of townhouse Unit 1. Accordingly, a verdict will be entered in favor of Layo and against Peoples Bank on Peoples Bank's request for an order ejecting Layo from townhouse Unit 1.

## ORDER

And now, this 22nd day of October, 2014, upon consideration of the competent, credible and relevant evidence introduced during the non-jury trial on September 15, 2014, and September 16, 2014, the parties' proposed findings of fact and conclusions of law filed on September 22, 2014, and the joint stipulation filed on October 3, 2014, and based upon the factual findings and legal conclusions set forth in Sections II and III above, it is hereby ordered and decreed that a non-jury verdict is entered in favor of defendant, Sheila M. Layo, and against plaintiff, Peoples Neighborhood Bank, formerly Peoples National Bank, on plaintiffs request for ejectment relief.