### Fiore, Appellant, *v.* Fiore.

Argued September 28, 1961. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN and ALPERN, JJ.

*William L. Jacob*, with him *William L. Jacob, Jr.*, for appellant.

*Edward L. Flaherty, Jr.*, with him *Gregor F. Meyer*, and *Meyer and Flaherty*, for appellee.

OPINION BY MR. JUSTICE EAGEN, November 14, 1961:

John Fiore, deceased,[1] during his lifetime executed a deed to his wife, Antoinetta Fiore, the defendant herein, conveying his interest in lands in Allegheny County. The plaintiff, a son, instituted this action in equity to obtain judicial nullification of the deed. The

---

[1] He died intestate leaving his widow and four children surviving.

chancellor entered an adjudication dismissing the complaint. Exceptions thereto were dismissed by the court en banc, and from the final decree in favor of the defendant, plaintiff appeals.

The deed in question was prepared by an attorney under the direction of the grantor. It was executed, witnessed and acknowledged on September 25, 1940. It was not recorded until November 27, 1957, long after the death of the grantor which occurred on September 3, 1942.

The chancellor, whose findings were confirmed by the court en banc, found as a fact that the deed was delivered by the grantor to the attorney who prepared the deed for the purpose of recording, and that at the time of said delivery the attorney was an agent for the grantee. Such a finding of fact is controlling on appeal, if supported by adequate evidence: Sterrett v. Sterrett, 401 Pa. 583, 166 A. 2d 1 (1960). The chancellor further concluded that legal delivery to the grantee had taken place and a valid title passed to the defendant. Conclusions of law are always subject to our review on appeal and also, after giving full weight to the facts found in the court below, we have the further right to make our own inferences and deductions therefrom: Pronzato v. Guerrina, 400 Pa. 521, 163 A. 2d 297 (1960).

We have examined the record carefully. It is not convincing that the attorney who prepared the deed was acting as the agent of the grantee at the time the deed was placed in his hands. More importantly, vital facts are missing necessary to establish that a legal delivery of the deed to the grantee was effected.

In order to validate defendant's claim to the ownership of the property involved there are two indispensable requisites: (1) a donative intent upon the part of the grantor, i.e., an intent to make a gift to the grantee then and there, when the deed was executed; (2) a de-

livery of the deed to the grantee, either actual or constructive, which divested the donor of all dominion over the property and invested the donee therewith. *Swartz v. Hafer,* 354 Pa. 320, 47 A. 2d 224 (1946); *Herr v. Bard,* 355 Pa. 578, 50 A. 2d 280 (1947). The recording of the deed was not essential to its validity or the transition of the title: *Mower v. Mower,* 367 Pa. 325, 80 A. 2d 856 (1951). Nor was it essential that the grantee have knowledge of the transaction. By subsequent acceptance, she ratified the original delivery if such had occurred: *Rynier Estate,* 347 Pa. 471, 32 A. 2d 736 (1943); *Pronzato v. Guerrina,* supra.

However, there must have been a delivery of the instrument to the grantee and while the execution, sealing, acknowledging and recording of a deed gives rise to a presumption of delivery, this is a factual presumption and as such, is rebuttable: *Chambley v. Rumbaugh,* 333 Pa. 319, 5 A. 2d 171 (1939); *Cray Estate,* 353 Pa. 25, 44 A. 2d 286 (1945).

For a legal delivery to be effected, it is not necessary that the deed be delivered directly to the grantee. It may be placed in the possession of a third party for delivery to the grantee upon the happening of a *specified* contingency. In such cases, the legal delivery date is that when the donor effectuated his intention: *Rynier Estate,* supra; *Pronzato v. Guerrina,* supra; *Hartman's Estate (No. 2),* 320 Pa. 331, 182 Atl. 232 (1936); *Wagoner's Estate,* 174 Pa. 558, 34 Atl. 114 (1896). However, delivery is not accomplished by the mere handing of the executed deed to a stranger. Likewise, the mere handing of the executed deed, without more, to a third person who is an agent of the grantee is ineffective. In order for the delivery to be effectual and to result in a culmination of the transition of the title, *there must be an express and definite instruction* that the deed is to be given to the grantee then or at some future time: *Swartz v. Hafer,* supra; *Rynier Estate,* su-

pra; *Lewis v. Merryman,* 271 Pa. 255, 114 Atl. 655 (1921); *Sears v. Scranton Trust Co.,* 228 Pa. 126, 77 Atl. 423 (1910); *Stewart's Estate,* 309 Pa. 204, 163 Atl. 754 (1932).

Let us examine the facts with these principles of law in mind.

The attorney, who prepared the deed, testified that he did so at the personal request of the grantor for the purpose of conveying title to the wife. The wife-grantee was not present and had no inkling of the transaction until more than seventeen years later. In recalling the details of the transaction, the attorney did not testify that he received from the grantor any instructions to deliver the deed to the grantee then, or at any time in the future. Nor did he say that he received instructions to record it, or that he received any directions to make known the existence of the deed to the grantee. On the other hand, he did say that it was his impression that the deed was under the control of the grantor at all times while he lived, and that if the grantor had requested its return or destruction, he would have complied with the request. While it may be argued that this merely represents the conception of the attorney as to the legal effect of the deed, and that his duty would be measured not by what he thought but rather by what the law required him to do (See, *Rynier Estate,* supra), still it is important testimony in determining whether or not the grantor intended to completely divest himself of ownership of the property on the occasion involved.

As noted before, the deed was not recorded for more than seventeen years after its execution and more than fifteen years subsequent to the grantor's death. The attorney explains this fact by saying "that *probably*[2] it should have been recorded years before" and that at

---

[2] Emphasis, ours.

the time of the execution of the deed the property was so heavily encumbered, that the recording would have been an "idle gesture." In the meantime, the deed became lost and finally in November 1957 was rediscovered, and recorded after the attorney notified the grantee of its existence and collected $200 for his services.

Further facts in the record shed light upon the truth. Following the execution of the deed, the grantor continued his complete control over the property until his death. At no time did he tell the grantee in the deed, or any members of his family, that he had deeded over his interest to the defendant. He made no inquiry to see if the deed had been recorded or effort to accomplish such. Following the grantor's death, the plaintiff, a son, assumed full responsibility of clearing up serious clouds existing on the title and of maintaining the property over the years. He secured a quit claim deed in favor of the heirs of his deceased father from a Tennessee corporation, which apparently owned an undivided one-half interest in the property as evidenced by the records of the recorder of deeds. He resisted foreclosure against the property on an existing recorded mortgage, caused an investigation resulting in the disclosure that the mortgage had been overpaid, and obtained the payment of a refund to the estate of his father in the sum of $2000.

It, therefore, seems clear to us that when the deed in question was executed, the grantor did not intend to vest title then and there in the grantee, and that the evidence is of sufficient quality to overcome the presumption of delivery.

Decree reversed. The court below is directed to enter a decree consonant with this opinion. Costs to be divided between the parties.