**FIRST HORIZON HOME LOAN COR-PORATION d/b/a MNC Mortgage Corporation, Appellant**

v.

**ADAMS COUNTY TAX CLAIM BUREAU.**

Commonwealth Court of Pennsylvania.

Argued March 30, 2004.

Decided April 22, 2004.

Jonathan J. Bart, Philadelphia, for appellant.

David K. James, Gettysburg, for appellee.

Richard E. Thrasher, Gettysburg, for intervenor, R. Inskip.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

First Horizon Home Loan Corporation d/b/a/ MNC Mortgage Corporation (First Horizon) appeals from the August 25, 2003, order of the Court of Common Pleas of Adams County (trial court) dismissing First Horizon's exceptions and objections to a tax sale. We affirm.

The relevant facts are not in dispute. First Horizon was the holder of a mortgage federally insured by the Department of Housing and Urban Development (HUD) on property situated at 40 Abbotts Drive, Abbottstown, Adams County (property). After the mortgage fell into default, First Horizon instituted a mortgage foreclosure action and acquired ownership of the property by deed from the county sheriff on March 25, 2002. The deed was recorded the same day.

On July 22, 2002, the Adams County Tax Claim Bureau (Bureau) sent a Notice of Public Tax Sale to First Horizon by certified mail, stating that the property was scheduled for sale on September 13, 2002, due to unpaid real estate taxes for the year 2000 in the approximate amount of $980. First Horizon received this notice on July 25, 2002.

On August 1, 2002, in accordance with applicable federal regulations, First Horizon conveyed the property to HUD. First Horizon was responsible for conveying good and marketable title to HUD, 24 C.F.R. § 203.366, and failure to do so could result in the loss of the property by HUD and the loss of insurance coverage for First Horizon. 24 C.F.R. § 203.363.

The Bureau properly advertised the sale of the property in three newspapers on August 2, 2002, and the Bureau properly posted notice of the sale on the property on August 9, 2002. The deed from First Horizon to HUD was recorded on August 29, 2002.

First Horizon did not contact the Bureau concerning the tax sale and the transfer of the property. However, during the week of the sale, Barbara Ann Pepal, the Bureau's assistant director, made numerous attempts to contact First Horizon.[1] On September 10, 2002, Pepal finally reached a First Horizon office in Texas and spoke to a Jimmy Crittendon. Pepal informed Crittendon of the sale scheduled for September 13th and offered to contact First Horizon's Philadelphia office. Crittendon declined her offer and said he would call himself and would have the matter taken care of before the date of the tax sale.

On September 13, 2002, the property was sold at the tax sale to Randall Inskip. On the day of the tax sale, the Bureau staff had checked the County's CAMA system to verify the current recorded owner of the property;[2] however, the transfer of the property from First Horizon to HUD

---

1. Ms. Pepal testified that during the week before a tax sale, the Bureau makes every effort to contact all owners of the properties scheduled for sale. (N.T. at 15.)

2. The CAMA system is a computer program connected to the County's Mapping Department, Tax Assessor's Office and Tax Appraisal Department which, *inter alia*, attempts to update information regarding tax parcels, including the identity of the current owner. The program is not connected with the Recorder of Deeds or Prothonotary.

was not posted in the CAMA system at that time. The Bureau first learned of the transfer from First Horizon to HUD on October 3, 2002, when the Bureau received correspondence from an abstract service. On November 1, 2002, the transfer to HUD was posted in the County's CAMA system.

On or about October 23, 2002, First Horizon filed objections and exceptions to the tax sale, pursuant to section 607 of the Real Estate Tax Sale Law (Law),[3] asserting that the tax sale must be set aside because proper notice was not given to HUD, the owner of the property on the date of the sale. In its answer, the Bureau argued that notice to First Horizon alone was sufficient. The Bureau also asserted that First Horizon did not have standing to file objections to the tax sale.

On February 4, 2003, the trial court held a hearing on First Horizon's objections to the tax sale. Counsel for both parties stipulated that: (1) First Horizon received notice of the tax sale on July 25, 2002; (2) the Bureau properly advertised the sale and posted the property; (3) the transfer of the property from First Horizon to HUD was recorded on August 29, 2002; (4) the Bureau had no notice of the transfer of the property prior to the tax sale; and (5) the Bureau did not provide notice of the tax sale to HUD.[4]

The Bureau argued that First Horizon lacked standing to object to the tax sale under section 607 of the Law because First Horizon was not the record owner of the property on the date of the tax sale. The Bureau also argued that it had complied with all of the applicable notice requirements set forth in section 602 of the Law.[5] First Horizon asserted that equitable principles prohibited the Bureau from arguing that First Horizon lacked standing due to lack of ownership while also arguing that notice of the tax sale to First Horizon was legally sufficient. First Horizon also argued that the Bureau was required to do more, pursuant to section 607a of the Law,[6] to confirm ownership of the property, particularly because a federal agency was involved. First Horizon asserted that common sense business practices dictated that the Bureau should have performed a title search and/or should have notified the attorney of record who represented First Horizon in the mortgage foreclosure action prior to the tax sale.

Following the hearing, the trial court concluded that First Horizon did not have standing to file objections and exceptions to the tax sale under section 607 of the Law because First Horizon was neither an owner nor a lien creditor at the time of the sale. The trial court also determined that, even if First Horizon had standing, it could not prevail because the Bureau followed all of the statutory notice requirements prior to the sale. The trial court further held that section 607a of the Law was not applicable because the circumstances raised no doubt as to the actual and timely receipt of notice by First Horizon. For the same reason, the trial court held that the Bureau had no duty to provide notice to First Horizon's attorney.

---

**3.** Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. § 5860.607.

**4.** Argument during the hearing was based on these factual stipulations. Only two witnesses, the Bureau's director and assistant director, testified at the hearing concerning the Bureau's tax sale procedures and its contacts with First Horizon.

**5.** 72 P.S. § 5860.602.

**6.** *Added by* the Act of July 3, 1986, P.L. 351, 72 P.S. § 5860.607a.

On appeal to this court,[7] First Horizon first argues that this matter must be remanded for an evidentiary hearing because the trial court failed to consider whether First Horizon had an interest in the property or suffered any harm as a result of the tax sale. First Horizon asserts that the trial court should have taken evidence regarding the nature of the relationship between First Horizon and HUD, the details of the transfer from First Horizon to HUD and the losses sustained by First Horizon as a result of the sale. According to First Horizon, it has standing to challenge the tax sale because its interest was adversely affected.

■ The Bureau responds that First Horizon waived the issue of whether it was aggrieved by the tax sale because First Horizon did not raise that issue in its Petition to Set Aside the Tax Sale, at the evidentiary hearing, in the briefs submitted thereafter, or in its statement of issues on appeal to this court. However, First Horizon counters that it is entitled to a *presumption* of proper standing and that the Bureau had the burden to present sufficient evidence on this issue before the burden shifted to First Horizon. According to First Horizon, the Bureau presented no evidence on this issue, characterizing the issue as a pure question of law.

■ However, the record reflects that the Bureau asserted that First Horizon lacked standing prior to and during the evidentiary hearing. At the hearing, the parties *stipulated to facts* that established that First Horizon was not the owner of the property on the date of the tax sale. We conclude that the stipulated facts were sufficient to rebut any presumption of proper standing to which First Horizon may have been entitled. Thus, the burden shifted back to First Horizon to establish that it was aggrieved by the tax sale. Because First Horizon failed to present evidence on this issue, we agree with the Bureau that this issue was waived.

■ We also agree with the Bureau that there is no statutory basis to support First Horizon's claim to standing. Section 607(a.1) of the Law provides that any owner or lien creditor may file objections or exceptions to a tax sale within thirty days after the court has made a confirmation nisi of the consolidated return. 72 P.S. § 5860.607(a.1). At the time of the sale, First Horizon was not an owner or lien holder; it does not base its claim of standing on this provision and it presented no evidence to establish facts warranting an exception to or expansion of this provision. Accordingly, the trial court properly held that First Horizon lacks standing to contest the tax sale. *See Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178 (Pa.Cmwlth.), *appeal denied,* 560 Pa. 753, 747 A.2d 373 (1999); *Farro v. Tax Claim Bureau of Monroe County,* 704 A.2d 1137 (Pa.Cmwlth.1997), *appeal denied,* 555 Pa. 722, 724 A.2d 936 (1998); *Appeal of Yardley,* 166 Pa.Cmwlth. 596, 646 A.2d 751 (1994).[8]

---

7. Our scope of review is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence or clearly erred as a matter of law. *Plank v. Monroe County Tax Claim Bureau,* 735 A.2d 178 (Pa.Cmwlth.), *appeal denied,* 560 Pa. 753, 747 A.2d 373 (1999).

8. Alternatively, even if First Horizon had standing on the basis that it was aggrieved by the tax sale, the trial court correctly determined that the Bureau complied with section 602 of the Law. There is no dispute that the sale was properly advertised, the property was properly posted and notice to First Horizon was returned with the required signature of the addressee. *See* 72 P.S. § 5860.602.

In addition, we reject First Horizon's contention that the Bureau was required to undertake the additional notification efforts set

■ First Horizon's final argument is that, regardless of whether or not First Horizon has standing, principles of equity require that the court set aside the tax sale for lack of notice to HUD. However, First Horizon cites no authority that allows it to raise this issue on behalf of HUD.[9]

Accordingly, we affirm.

### ORDER

AND NOW, this 22nd day of April, 2004, the order of the Court of Common Pleas of Adams County, dated August 25, 2003, is hereby affirmed.

forth in section 607a of the Law, which provides that:

> (a) When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, *and such mailed notification is either returned without the required receipted personal signature of the addressee or is not returned or acknowledged at all, then,* before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him.

72 P.S. § 5860.607a (emphasis added). By its plain language, section 607a of the Law requires the Bureau to exercise reasonable efforts to locate and notify a property owner *wherever some doubt is raised as to the actual receipt of notice by the owner.* Here, however, the Bureau confirmed First Horizon's receipt of notice prior to the sale. Accepting First Horizon's arguments that the Bureau should have done more would impose upon taxing bodies a duty to *continually track changes in title for all properties subject to sale even where notice to the record owner has been confirmed.* Neither the legislature nor the courts has imposed any such obligation.

9. We note that, during the pendency of these proceedings, neither First Horizon nor HUD requested that HUD be allowed to become a party to this action and object to the sale.