# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Amy Nguyen and Kenny Pham | : | |
| | : | |
| v. | : | No. 393 C.D. 2020 |
| | : | Argued: November 12, 2020 |
| Delaware County Tax Claim | : | |
| Bureau and Chadd Neumann | : | |
| | : | |
| Appeal of: Chadd Neumann | : | |

**BEFORE:**   **HONORABLE P. KEVIN BROBSON, Judge**
          **HONORABLE CHRISTINE FIZZANO CANNON, Judge (P.)**
          **HONORABLE ELLEN CEISLER, Judge**

**OPINION BY JUDGE BROBSON**        **FILED: December 29, 2020**

Appellant Chadd Neumann, the upset tax sale purchaser (Tax Sale Purchaser), appeals from an order of the Court of Common Pleas of Delaware County (Common Pleas), dated January 15, 2020, which granted Appellees Amy Nguyen's and Kenny Pham's (Objectors) petition to set aside the upset tax sale (Petition). Common Pleas determined that Objectors had standing as equitable owners of the property, and the Delaware County Tax Claim Bureau's (Bureau) deficiencies in providing notice of the tax sale to the prior owner of the property pursuant to the Real Estate Tax Sale Law (RETSL)[1] constituted grounds to set aside the upset tax sale. For the reasons that follow, we vacate the order and remand the matter to Common Pleas for further proceedings.

---

[1] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-.803.

# I. BACKGROUND

Pursuant to Section 607 of the RETSL, 72 P.S. § 5860.607, Objectors filed the Petition, seeking to set aside the upset tax sale of property located at 808 Garrett Road, Upper Darby, Pennsylvania (Property). (Original Record (O.R.), Item No. 1, ¶ 1.) Objectors averred that the "Property was reportedly exposed to a[n] upset tax sale conducted by the [Bureau] on or about September 13, 2018, reportedly on account of a tax claim against the prior owner of the . . . Property, Nhi Thi Ngoc Phan [(Prior Owner)], for the years 2016 and 2017," and that "the Bureau failed to provide . . . Prior Owner with proper notice of the sale and failed to make reasonable efforts to uncover . . . Prior Owner's location." (*Id.*, ¶¶ 2, 3.)

Objectors averred that they have standing to raise exceptions and objections, because: (1) they purchased the Property as their residence on September 13, 2018—the same day as the reported upset tax sale—for $140,000.00 (*id.*, ¶¶ 5, 8); (2) at the closing for the sale of the Property, "a check in the amount of $13,518.47 was issued to the Bureau for the delinquent taxes owed" (*id.*, ¶ 6); (3) after the closing, they "believed they acquired good and record title to the . . . Property, free and clear of any tax claims or liens" (*id.*, ¶ 7); (4) they currently live at the Property (*id.*, ¶ 9); (5) they "are the owners of the . . . Property through their purchase from . . . Prior Owner" (*id.*, ¶ 10); (6) "[d]ays after the [c]losing, the check disbursed to the Bureau was returned to the settlement agent that handled the sale of the . . . Property," accompanied by a letter from the Bureau, indicating that the property was sold in an upset tax sale on September 13, 2018 (*id.*, ¶ 11, Ex. B); and (7) it was at or about that time that Objectors and Prior Owner "learned for the

2

first time that the . . . Property had been exposed to the underlying upset tax sale on the same date as the [c]losing," as Prior Owner had not received notice of the upset tax sale (*id.*, ¶¶ 12, 13).

Objectors averred that "the Bureau failed to provide . . . Prior Owner with advance notice of a tax claim, lien, or the upset sale of the . . . Property conducted on September 13, 2018." (*Id.*, ¶ 14.) Objectors attached to the Petition what they contend is the complete file they received from the Bureau concerning the upset tax sale. (*Id.*, ¶ 15.) The file contains copies of a certified mail card directed to Prior Owner at the address of the Property, which Objectors describe as appearing "to represent the Bureau's attempt to deliver notice of the [tax] [u]pset [s]ale to . . . Prior Owner." (*Id.*, ¶¶ 15-17.) The return receipt "indicates that a mailing was directed, certified mail, restricted delivery" and "contains an illegible signature of an individual[] and does not list the printed name of the party" who purportedly signed the return receipt. (*Id.*, ¶¶ 18-19.) Objectors averred that, according to the United States Postal Service website, the notice was delivered to the Property on July 21, 2018. (*Id.*, ¶ 20.) Prior Owner did not sign the return receipt, as she did not live at the Property on that date, has never lived at the Property, and had kept the Property as an investment—*i.e.*, rental property. (*Id.*, ¶¶ 21-22.) It is unclear who signed the return receipt. (*Id.*, ¶ 23.) Moreover, Prior Owner's tenant at the time did not have authority to accept or sign for mail on behalf of Prior Owner, and she did not inform Prior Owner of any notice regarding the upset tax sale. (*Id.*, ¶¶ 24-25.) The Bureau's file also includes handwritten notes which appear to indicate that the Bureau attempted to call Prior Owner on August 29, 2018, but that the call could not be completed as dialed. It is unclear where the Bureau located the listed phone number, and a search revealed the number could belong to three

3

individuals in the greater Philadelphia area, none of which are Prior Owner. (*Id.*, ¶¶ 28-30.) The Bureau had previously attempted to notify Prior Owner as to the delinquent 2016 taxes by certified mail to the Property, but the certified mail was returned as unclaimed. (*Id.*, ¶ 34.) Based upon the above, Objectors averred that the Bureau was aware of circumstances raising a significant doubt as to Prior Owner's receipt of the notice of sale. (*Id.*, ¶ 35.) Nevertheless, the Bureau did not send notice to the Prior Owner at her correct address or reasonably attempt to investigate her true address. (*Id.*, ¶ 36.) As a result, Prior Owner never received the notice of sale nor did she see any posted notice or advertisement of the sale in any publication. (*Id.*, ¶¶ 38-40.) Prior Owner had no knowledge or actual notice of the upset tax sale until the check disbursed to the Bureau at the closing was returned days later. (*Id.*, ¶ 41.) Had Prior Owner known, she would have taken steps to make sure the alleged tax claim was satisfied. (*Id.*, ¶ 42.) Thus, Objectors asserted that the upset tax sale should be set aside because the Bureau violated RETSL when it failed to provide notice of the sale and failed to exercise reasonable efforts to ascertain the whereabouts of the record owner.

Tax Sale Purchaser answered the Petition on November 19, 2018, arguing that Objectors did not have standing to challenge the upset tax sale on the basis of lack of notice. (O.R., Item No. 2.) In support of that position, Tax Sale Purchaser averred that Objectors did not become record owners of the Property until their deed was recorded on September 24, 2018—eleven days after the upset tax sale. (*Id.*, ¶ 1.) Furthermore, Objectors were neither owners nor lien creditors on September 13, 2018, when the upset tax sale occurred. (*Id.*, ¶ 71.) The Bureau did not answer or respond to the Petition.

4

On December 4, 2018, Common Pleas scheduled a hearing on the matter for January 23, 2019. (O.R., Item No. 4.) At the hearing, Tax Sale Purchaser's attorney informed Common Pleas regarding the "preliminary issue" of standing and requested that the matter be continued to the April 4, 2019 list to allow the parties to submit memoranda of law on the issue of standing before the parties get to the Bureau's burden with regards to the underlying sale. (O.R., Item No. 19 at 4.) Thereafter, Objectors and Tax Sale Purchaser filed memoranda of law, addressing only the issue of standing. (O.R., Item Nos. 9, 10.) Objectors also filed a praecipe to attach affidavits of Objectors to the Petition, along with copies of a deed for the Property, dated September 11, 2018—two days before the closing and upset tax sale—as well as a reply memorandum. (O.R., Item No. 11.) At the call of the April 4, 2019 list, the Tax Sale Purchaser requested that Common Pleas schedule oral argument on the issue of standing. (O.R., Item No. 20 at 3-4.) Common Pleas heard argument on May 30, 2019. (O.R., Item No. 18.) Toward the conclusion of the hearing, Tax Sale Purchaser's counsel stated: "I understand that if the Court [concludes] there's standing, we're going to have a hearing on this. We're going to have a real trial . . . ."[2] (*Id.* at 16-17.) The Bureau did not file a brief or participate in the oral argument.

Based on the record, it appears that nothing else occurred until Common Pleas issued an order, dated January 15, 2020, granting the Petition. (O.R., Item No. 21 at 1.) Common Pleas also issued the following findings of fact:

> 1. [Objectors] purchased the Property . . . from its [P]rior Owner on September 13, 2018[,] for $140,000.00.

---

[2] We note, in the event that Common Pleas disagreed with Tax Sale Purchaser's counsel's understanding of the procedural posture of the matter, it never indicated so.

2.  At the closing for the sale of the Property, a check for $13,518.47 was issued to [the Bureau] for delinquent taxes owed on the Property for the years 2016 and 2017.

3.  Unbeknownst to [Objectors] and the [P]rior Owner, the Property had been exposed to the underlying [upset] tax . . . sale on September 13, 2018[,] and was sold to [Tax Sale Purchaser].

4.  The Record is devoid of any evidence as to the time of the [u]pset [t]ax [s]ale on September 13, 2018.

5.  Days after the [c]losing, the $13,518.47 check for delinquent taxes on the Property from the [Bureau] was returned to the [s]ettlement [a]gent.

6. Subsequently, [Objectors] learned that the Property had been exposed for sale at the [u]pset [t]ax [s]ale on the same date as the [c]losing, September 13, 2018.

7.  The [P]rior Owner alleged that she did not receive notice of the [u]pset [t]ax [s]ale.

8.  [Objectors] purchased the . . . Property as their residence.

9.  Objectors currently live [at] the . . . Property.

10.  [Common Pleas] held Oral Argument wherein it determined that the central issue in this matter was . . . [Objectors'] standing in this matter.

. . . .

21.  [Objectors] and the [P]rior Owner entered into and signed an Agreement of Sale for the Property on June 9, 2018[,] and June 16, 2018, respectively.

22.  [Objectors] received the executed deed for the Property on September 11, 2018, two days before the September 13, 2018 [u]pset [t]ax [s]ale.

(*Id.* at 2-5 (citations omitted).)  Common Pleas concluded that, "under the doctrine of equitable conversion, Objectors acquired rights as 'equitable owners' pursuant to their [a]greement of [s]ale to purchase the Property from the [P]rior [O]wner." (*Id.*, Conclusion of Law (COL) No. 20.)  Common Pleas also found that, "[u]pon review of the [r]ecord, [Common Pleas] finds that the [Bureau] failed to meet the statutory notice requirements under [RETSL]." (*Id.*, COL No. 24.)  Common Pleas

6

concluded that, "[i]n light of [Objectors'] standing as equitable owners and the deficiencies in providing notice pursuant to [RETSL], the [u]pset [t]ax [s]ale in this matter should be set aside." (*Id.*, COL No. 25.)  This appeal followed.[3]

## II.  ISSUES

On appeal, Tax Sale Purchaser argues that Objectors lack standing to contest the upset tax sale.  Tax Sale Purchaser also argues that Common Pleas denied him due process of law when it granted the Petition without an evidentiary hearing. As to this issue, Tax Sale Purchaser contends that Common Pleas denied him the opportunity to produce evidence pertaining to notice.

## III.  DISCUSSION

We begin with the threshold question of who has standing to petition to set aside an upset tax sale.  This Court has explained:

> "The traditional concept of standing focuses on the idea that a person who is not adversely impacted by the matter he seeks to challenge does not have standing to proceed with the court system's dispute resolution process." *Pittsburgh Palisades Park, LLC v. [Cmwlth.]*, . . . 888 A.2d 655, 659 ([Pa.] 2005) (citing *William Penn Parking Garage v. City of Pittsburgh*, . . . 346 A.2d 269, 280-81 ([Pa.] 1975) (plurality)).  In other words, a person must be aggrieved or have a legally sufficient interest in a matter to have standing.  As stated by our Supreme Court:
>
>> [A]n individual can demonstrate that he is aggrieved if he can establish that he has a substantial, direct, and immediate interest in the outcome of the litigation in order to be deemed to have standing.  An interest is 'substantial' if it is an interest in the resolution of the challenge which 'surpasses the common interest of all citizens in procuring obedience to the law.'  Likewise, a 'direct' interest

---

[3] "Our scope of review in tax sale cases is limited to determining whether the trial court abused its discretion, rendered a decision with a lack of supporting evidence, or clearly erred as a matter of law." *Shipley v. Tax Claim Bureau of Delaware Cnty.*, 74 A.3d 1101, 1104 n.3 (Pa. Cmwlth. 2013) (quoting *Plank v. Monroe Cnty. Tax Claim Bureau*, 735 A.2d 178, 181 n.6 (Pa. Cmwlth.), *appeal denied*, 747 A.2d 373 (Pa. 1999)).

> mandates a showing that the matter complained of 'caused harm to the party's interest,' *i.e.*, a causal connection between the harm and the violation of law. Finally, an interest is 'immediate' if the causal connection is not remote or speculative.

*Id*. . . . , 888 A.2d at 660 (citations omitted).

*CR 2018 LLC v. Columbia Cnty. Tax Claim Bureau*, 229 A.3d 398, 402 (Pa. Cmwlth. 2020) (quoting *Shipley*, 74 A.3d at 1105). "'Whether [an individual] ha[s] standing, as an equitable owner, to file [a petition to set aside a tax sale] pursuant to Section 607 of the [RETSL, 72 P.S. § 5860.607,] is a question separate from whether [the individual is] entitled to notice.'" *Id*. (quoting *Shipley*, 74 A.3d at 1105).

"Section 607(b) of the RETSL provides, in relevant part, that 'objections or exceptions [to a tax sale] may be filed by any owner or lien creditor.'" *Id*. (quoting 72 P.S. §5860.607(b)). Section 102 of the RETSL, 72 P.S. § 5860.102, defines "owner" as

> the person in whose name the property is last registered, if registered according to law, or, if not registered according to law, the person whose name last appears as an owner of record on any deed or instrument of conveyance recorded in the county office designated for recording and in all other cases means any person in open, peaceable and notorious possession of the property, as apparent owner or owners thereof, or the reputed owner or owners thereof, in the neighborhood of such property; as to property having been turned over to the bureau under Article VII [(relating to property purchased by taxing districts prior to the RETSL)] by any county, 'owner' shall mean the county.

Section 607(d) of the RETSL limits the challenges to upset tax sales by owners of the real estate at the time of the upset tax sale and limits objections or exceptions to the "regularity or legality of the procedures of the bureau in respect to such sale."

"This Court has recognized that '[t]he legislature designated [in the RETSL] that only owners or lien creditors may file objections or exceptions to the return of the [tax bureau] and confirmation nisi by the trial court of the tax sale.'"

8

*CR 2018 LLC*, 229 A.3d at 402-03 (quoting *Appeal of Yardley*, 646 A.2d 751, 755 (Pa. Cmwlth. 1994) (emphasis omitted)). "Therefore, one who is neither an 'owner' nor a lienholder [on the date of the tax sale] cannot complain of noncompliance with the notice provisions." *In re Petition of Crouthamel*, 412 A.2d 645, 647 (Pa. Cmwlth. 1980).

Simply stated, persons who are not owners or lien creditors of the property at the time of the tax sale do not have standing to file objections or other exceptions. *First Horizon Home Loan Corp. v. Adams Cnty. Tax Claim Bureau*, 847 A.2d 774, 777 (Pa. Cmwlth. 2004) (*First Horizon*). Objectors, based on the record before us, are not lien holders. Consequently, their only avenue to have standing in this case is to show they were "owners" of the property at the time of the upset tax sale pursuant to Section 102 of the RETSL. As noted above, Common Pleas concluded that Objectors were equitable owners of the Property at the time of the upset tax sale.

## A.  Equitable Owners

Tax Sale Purchaser contends that Common Pleas erred when it concluded that Objectors have standing to challenge the tax sale based on their equitable interest in the Property at the time of the tax sale. We begin by briefly reviewing the law that provides for equitable ownership.

The Pennsylvania Supreme Court has stated that "[i]t is well-established law . . . that when the [a]greement of [s]ale is signed, the purchaser becomes the equitable or beneficial owner through the doctrine of equitable conversion." *DiDonato v. Reliance Standard Life Ins. Co.*, 249 A.2d 327, 329 (Pa. 1969) (citing *Payne v. Clark*, 187 A.2d 769 (Pa. 1963)). The Supreme Court has explained:

> The doctrine of equitable conversion arose out of the power of the chancellor to compel the performance which was intended by the parties. This power was grounded in the principle that equity treats as done those things that should be done, *quod fieri debet facile*

9

*praesumitur.* It is precisely because of the equitable remedy of specific performance that fundamental real property rights are created in a purchaser of realty prior to delivery of the deed. *Kerr v. Day*, 14 Pa. 112 (1850). The principles applicable to the sales of real property between private parties are equally applicable to sales for delinquent taxes. . . . Thus, the doctrine of equitable conversion is applicable to a sale for delinquent taxes and its operation conveys equitable title to the purchaser.

*Pivirotto v. City of Pittsburgh*, 528 A.2d 125, 127-28 (Pa. 1987).

We have previously addressed whether non-record owners of a property subject to an upset tax sale have standing to file objections to the upset tax sale under Section 607 of the RETSL. *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302 (Pa. Cmwlth. 2013). In *Husak*, the owners acquired the subject property via a quitclaim deed in 2006, but they did not record the deed until after the tax sale. *Id.* at 303. The tax sale purchaser argued that the owners lacked standing to file objections because a lender, Fannie Mae, was the record owner of the property at the time of the September 2010 tax sale and remained so until the owners finally recorded their quitclaim deed in March 2011. *Id.* at 304. The tax sale purchaser argued that the owners were not record "owners" as defined by Section 102 of the RETSL so they could not file objections pursuant to Section 607 of the RETSL. *Id.* (citing 72 P.S. §§ 5860.102, 5860.607). The Court of Common Pleas of Fayette County determined that, despite not recording the deed until after the sale, the owners were the equitable, if not legal, owners of the property at the time of the tax sale; therefore, they were persons aggrieved by the tax sale. *Id.* at 305. We agreed with common pleas that the owners had standing even though they did not hold record title and concluded that, "[b]y purchasing the subject property back from Fannie Mae in April 2006 for $150,000 and receiving a quitclaim deed for it,

10

[the o]wners acquired, at the very minimum, equitable title, a legally recognized interest in the subject property." *Id*. at 310 (citing *Pivirotto*, 528 A.2d at 128).

A few months later, in *Shipley*, we determined that a wife had an equitable interest in a property purchased with joint funds while she and her husband were married, even though she was not mentioned on the recorded deed. *Shipley*, 74 A.3d at 1106. Consequently, she had standing to challenge the judicial tax sale of the property. *Id.* The Court of Common Pleas of Delaware County denied her petition to set aside the judicial tax sale and found that the county tax claim bureau satisfied the notice requirements of Section 102 of the RETSL, 72 P.S. § 5860.102. *Id*. We reversed, holding that, although the tax claim bureau was not required to provide notice to the wife of the impending judicial sale because she was not the legal owner, the wife had standing to challenge the judicial tax sale of the property. *Id*.

The following year, in *Moore v. Keller*, 98 A.3d 1 (Pa. Cmwlth. 2014), we reviewed a case involving a petition to set aside a tax sale filed by the executrix of the estate of a deceased record owner. The Court of Common Pleas of Luzerne County denied the petition, concluding that the executrix was neither an "owner" nor "lien creditor" of the property as defined by Section 102 of the RETSL and, consequently, lacked standing to petition to set aside the tax sale pursuant to Section 607(b) of the RETSL. *Moore*, 98 A.3d at 3 (citing 72 P.S. §§ 5860.102, 5860.607(b)). On appeal, we reversed common pleas' decision. We reasoned:

> The Section 102 definition of "owner" is relevant to whether the [tax bureau] was required to provide [the executrix] with notice of a real estate tax sale conducted pursuant to Section 602 of the [RETSL]. As demonstrated by *Husak*, whether [the executrix] had standing to challenge the tax sale is based upon whether she had the requisite substantial, direct, and immediate interest in the sale of property to qualify as an aggrieved party. [*Husak*,] 61 A.3d at 309-10. At the time of the tax sale, [the executrix] had been living at the [p]roperty for 18 years and had invested substantial sums in capital improvements

11

and had been paying the tax bill. . . . Although [the executrix] is not an "owner" as defined by the [RETSL] because her name is not on the last registered deed to the [p]roperty, she is an equitable owner of the [p]roperty as a devisee[,] . . . [and] [w]e conclude that [the executrix], as an equitable owner, has the requisite substantial, direct and immediate interest in the sale of property to challenge a tax sale.

*Id.* at 4.

Tax Sale Purchaser argues that the facts and law in *Husak*, *Moore*, and *Shipley* are easily distinguishable and should not apply to Objectors' situation in this case. He argues that, in *Husak*, we concluded that the petitioners were owners as defined by Section 102 of the RETSL because they "were in open, peaceful and notorious possession of the property for many years prior to the sale and were in possession of an unrecorded Quit Claim Deed executed by the immediately previous titleholder, Fannie Mae." (Tax Sale Purchaser's Brief at 11.) He submits that, in *Moore*, we granted standing to the executrix based on her being a specific devisee of the deceased record owner and that, when her mother died in 1999, no decedent estate was ever opened for her prior to the tax sale in September 2012. (*Id.* at 11, 12.) Tax Sale Purchaser argues that we reversed because, "as a specific devisee (as contrasted to merely an intestate heir) under her mother's will, legal title to that property passed at her death to the [t]estatrix . . . . This all occurred well before the date of the upset tax sale." (*Id.* at 12.) Finally, he notes that, in *Shipley*, we granted the wife standing because of her "inchoate and contingent right to equitable distribution in the subject property under . . . Pennsylvania['s] Divorce Code"[4] based on the fact of her marriage, purchase of the property, and contribution of joint funds to purchase the property, which occurred long before the upset tax sale. (*Id.*)

Tax Sale Purchaser instead directs our attention to this Court's decision in *Fongsue v. Tax Claim Bureau of Delaware County and Roland Oris* (Pa. Cmwlth.,

_____
[4] 23 Pa. C.S. §§ 3101-3904.

No. 1229 C.D. 2007, filed January 5, 2009) (*Oris*), *appeal denied*, 981 A.2d 221 (Pa. 2009).[5]  There, the purchaser of a property at an upset tax sale, Roland Oris (Oris), appealed the order of the Court of Common Pleas of Delaware County that granted a petition to set aside the upset tax sale. *Oris*, slip op. at 1.  In January 1956, a deed was recorded for the property naming Oscar and Louise Boozer as owners. *Id.*, slip op. at 1, 2.  Both owners died intestate in the 1990s.  *Id.*, slip op. at 2. In September 2002, the Delaware County Board of Assessment changed the mailing address for notices concerning the property to Ronald Boozer (Boozer), the elder Boozers' only child, who lived in Baltimore, Maryland.  *Id*.  As of that date, no executor or administrator of Louise Boozer's estate had been appointed by the Register of Wills of Delaware County.  *Id*.

In the summer of 2006, the property was vacant and Boozer placed the property on the market.  *Id.*, slip op. at 3.  Sometime before July 19, 2006, the Tax Claim Bureau of Delaware County sent three separate notices of public sale to Boozer in Baltimore, and he signed for all three notices on the certified mail return receipt cards.  *Id.*, slip op. at 2.  A notice of public sale was posted on the property on July 25, 2006, and the property was among those listed for tax sale in three area newspapers.  *Id*.  On August 4, 2006, a notice of public sale was sent to Boozer in Baltimore, and the notice was not returned as undeliverable.  *Id*.  That same day, Boozer and Fongsue executed a standard agreement for the sale of real estate, with the closing scheduled to take place on September 6, 2006.  The closing did not take place on September 6, 2006, and it was rescheduled to September 22, 2006, because Boozer failed to obtain Letters of Administration on behalf of Louise Boozer.  *Id*.

---

[5] Pursuant to Commonwealth Court Internal Operating Procedure Section 414(a), 210 Pa. Code § 69.414(a), an unreported opinion of the Court filed after January 15, 2008, may be cited only "for its persuasive value, but not as binding precedent."

13

In the interim, Oris purchased the property for the upset tax sale price on September 13, 2006. *Id.* At the closing between Boozer and Fongsue held on September 22, 2006, Fongsue paid $89,000.00 in consideration for the property, plus closing costs. *Id.* Immediately after the closing, a check was tendered for past taxes due to the tax bureau. *Id.*

Fongsue filed a petition to set aside the upset tax sale in November 2006, and common pleas granted the petition in May 2007, concluding that Fongsue had standing because "she was an aggrieved party with an interest in the [p]roperty and deserved legal protection." *Id.*, slip op. at 4. Common pleas reasoned that because the owners of the property were deceased and could not receive notice of the sale, the provisions of Section 607.1 of RETSL,[6] 72 P.S. § 5860.607a, were triggered, and the tax bureau did not use reasonable effort to discover the whereabouts of the owners. *Id.*

Oris, on appeal, contended that Fongsue lacked standing because she was not the owner of the property at the time of the tax sale and Boozer's interest had already been divested by the tax sale when he delivered the deed to Fongsue. *Id.*, slip op. at 4, 5. We reversed common pleas and concluded that, pursuant to Section 102 of the RETSL, Fongsue was neither an owner nor a lien holder of the property at the time of the upset tax sale. *Id.*, slip op. at 5. We noted that Fongsue "has not pointed to any statute or case law which expands the definition of owner to include an equitable owner." *Id.*, slip op. at 7. "The trial court erred when it determined Fongsue had standing." *Id.*

We relied on this Court's decision in *First Horizon*, where we addressed a similar situation. First Horizon Home Loan Corporation (First Horizon) was the

---

[6] Added by the Act of July 3, 1986, P.L. 351.

14

holder of a mortgage federally insured by the Department of Housing and Urban Development (HUD) on property located in Adams County. *First Horizon*, 847 A.2d at 775. After the mortgage fell into default, First Horizon acquired ownership of the property through foreclosure and obtained a deed to the property in March 2002. *Id.* The deed was recorded the same day. *Id.* In July 2002, the Adams County Tax Claim Bureau sent a notice of public tax sale to First Horizon stating that the property was scheduled for sale on September 13, 2002, due to unpaid real estate taxes for the year 2000. *Id.* First Horizon received the notice. *Id.*

In August 2002, First Horizon conveyed the property to HUD in accordance with applicable federal regulations. *Id.* The deed from First Horizon to HUD was recorded that same month, but First Horizon did not contact the tax bureau concerning the September 13, 2002 tax sale and the transfer of the property to HUD. *Id.* The property was sold at a tax sale on September 13, 2002. *Id.* at 775. First Horizon filed objections and exceptions to the tax sale pursuant to Section 607 of the RETSL, asserting that the tax sale must be set aside because proper notice was not provided to HUD, the owner of the property on the date of the sale. *Id.* The tax bureau argued, in relevant part, that First Horizon lacked standing to file objections to the tax sale. *Id.* at 776. Common pleas, after a hearing on First Horizon's objection to the tax sale, concluded that First Horizon lacked standing because, under Section 607 of the RETSL, it was neither an owner nor a lien creditor. *Id.* First Horizon appealed. *Id.* We concluded, in pertinent part, that there was no statutory basis to support First Horizon's claim to standing, and common pleas properly held that First Horizon lacked standing to contest the sale. *Id.* at 777.

15

Recently, in *Matos v. Berks County Tax Claim Bureau*, 228 A.3d 976 (Pa. Cmwlth. 2020), we held that an option to purchase a leased property creates an equitable interest in a tenant who holds such an option. In *Matos*, two tenants entered into a "rent to own" agreement with the owner of the property paying a down payment of $7,000.00, $850.00 a month to rent the property, and $250.00 a month toward the purchase of the property. *Matos*, 228 A.3d at 978. The lease agreement expired on March 30, 2018. *Id.* The property was sold at a tax sale to the purchaser in September 2018. *Id.* The tenants challenged the sale based on the tax claim bureau not complying with the strict notice requirements of the RETSL and asserted they had standing based on the lease agreement that included an option to purchase the property. *Id.* The Court of Common Pleas of Berks County held that the tenants lacked standing to challenge the tax sale because their lease agreement expired before the tax sale, and it dismissed the case based on the pleadings. *Id.* The tenants appealed. *Id.*

We reversed common pleas' decision concerning the tenants' standing and remanded the case for further proceedings. *Id.* at 982. After reviewing our decisions in *Shipley* and *Husak*, we noted that "Pennsylvania courts have long held that an option to purchase land conveys a substantial and legally recognized equitable interest in the optionee," using the Pennsylvania Supreme Court's decision in *Detwiler v. Capone*, 55 A.2d 380 (Pa. 1947), as an example. We noted our Supreme Court's decision in *Detwiler*, wherein that court observed:

> An option to purchase is analogous to a contract for the sale of land; it is in nature an encumbrance on the land pledged. In such case the [optionor] is a trustee of the legal title for the benefit of the purchaser. . . . Equity regards the person bound to convey as having done what he should have done, *i.e.*[,] made the conveyance, and treats him as trustee for the optionee. Where an option is exercised the title

16

to the optionee relates back to the date of the option and his interest is regarded as real estate of that time[.]

*Matos*, 228 A.3d at 981 (quoting *Detwiler*, 55 A.2d at 383) (internal quotation marks and citations omitted). Based upon that reasoning, we concluded that the tenants asserted a substantial, immediate, and direct interest in the property because they hold an option to purchase the property and paid $18,000.00 toward the purchase. *Id.* We determined that common pleas erred by focusing on the expiration of the lease agreement, "which did not extinguish [the t]enants' equitable interest in the property[,] . . . [and] [t]he equitable interest created by the option agreement will relate back to the date of the option." *Id.*

Here, Common Pleas concluded that Objectors were equitable owners of the Property at the time of the upset tax sale due to their execution of an agreement to purchase the Property prior to the closing on September 13, 2018. Common Pleas did so without having created an evidentiary record, presumably having relied on the pleadings and affidavits. In support of Common Pleas' disposition of the matter at this stage of the proceedings, Objectors contend that Tax Sale Purchaser failed to verify his response to the Petition or challenge Objectors' affidavits and, as a result, admitted all the facts in the Petition and lost the opportunity to make a later factual challenge via an evidentiary hearing. We disagree.

In *Battisti v. Tax Claim Bureau of Beaver County*, 76 A.3d 111, 113 (Pa. Cmwlth. 2013), we determined that the Pennsylvania Rules of Civil Procedure did not apply to proceedings under Section 607 of the RETSL because they are not civil actions; the term "pleading" as used in the Rules of Civil Procedure "is a term of art that does not include a petition filed under Section 607 of the [RETSL]."[7]

---

[7] In *Battisti*, the appellant (taxpayer) paid her 2008 school district taxes six days late causing her payment to be short $6.30 in interest. *Battisti*, 76 A.3d at 112. The taxpayer later paid **(Footnote continued on next page…)**

17

*Id.* at 115. We further concluded that there was no mechanism that allowed a petition filed pursuant to Section 607 to be decided on the petition and answer and that the "pleadings" were not closed when the motion for judgment on the pleadings was filed.[8] *Id.* We determined that denying the objections to the upset tax sale without an evidentiary hearing was a denial of due process to the taxpayer. *Id.*

Based upon *Battisti*, we are persuaded that Common Pleas erred in relying on the pleadings and affidavits as evidence of the circumstances surrounding Objectors' purchase (or attempted purchase) of the Property for purposes of determining whether Objectors were equitable owners at the time of the upset tax sale rather than conducting an actual evidentiary hearing.

### B. Legal Owners

Objectors offer an alternate basis for standing, not directly addressed by Common Pleas or Tax Sale Purchaser—*i.e.*, legal ownership of the Property. Objectors argue that they acquired status as legal owners of the Property when Prior Owner executed and delivered the deed to them on September 11, 2018 (*i.e.*, two days before the tax sale of the property). Objectors submit:

---

her 2009 taxes, but the $6.30 delinquency for the 2008 taxes remained unpaid, leading to the tax claim bureau selling her home in an upset tax sale. *Id.* The taxpayer challenged the upset tax sale, arguing that she did not have notice that her payment for the 2008 taxes was short by $6.30, and she did not have notice of the scheduled upset tax sale. *Id.* The taxpayer's petition named the purchaser of the property and the tax claim bureau as respondents. *Id.* at 113. The court of common pleas, without holding a hearing, granted the purchaser's motion for judgment on the pleadings and dismissed the petition to set aside the upset tax sale. *Id.* The taxpayer appealed. *Id.*

[8] For example, some counties utilize standing orders or local rules to specify the procedures for petitions challenging an upset tax sale. If a court of common pleas chooses to have the Pennsylvania Rules of Civil Procedure apply to this type of statutory proceeding, it can certainly make that known through a standing order or a local rule. In this case, neither party has asserted that a standing order or a local rule exists that allows a party to file the equivalent of a motion for judgment on the pleadings to dismiss the case. In the absence of such an order or local rule, we will follow our decision in *Battisti*.

18

Under Pennsylvania law, title to real estate may be passed by execution and delivery of a deed, before or even without recording it. *In re Estate of Pentrack*, 405 A.2d 879 (Pa. 1979); *Sovereign Bank v. Harper*, 674 A.2d 1085 (Pa. Super. [] 1996). The delivery of the deed for real property is necessary to render it legally operative and to convey title. *Herr v. Bard*, . . . 50 A.2d 280 ([Pa.] 1947); *Atiyeh v. Bear*, . . . 690 A.2d 1245 [(Pa. Super.), *appeal denied*, 698 A.2d 63 (Pa. 1997)]); *Hogue v. Hogue*, . . . 174 A. 598 ([Pa. Super.] 1934).

Significantly, legal title to real property passes from a grantor to a grantee as of the date of delivery of the deed thereto. *Malamed v. Sedelsky*, . . . 80 A.2d 853 ([Pa.] 1951). It is not necessary that delivery of a deed should be made to the grantee himself or herself, but rather, a delivery to a third person (*e.g.*, a settlement agent) for the grantee may constitute a valid delivery sufficient to pass title. *Fiore v. Fiore*, . . . 174 A.2d 858 ([Pa.] 1961); *In re: Rynier's Estate*, . . . 32 A.2d 736 ([Pa.] 1943); *DiMaio v. Musso*, 762 A.2d 363 ([Pa. Super.] 2000); *In re Padezanin*, 937 A.2d 475 (Pa. Super. [] 2007).

(Objectors' Brief at 12, 13.) A close examination of the four Pennsylvania Supreme Court cases Objectors rely upon is warranted.

First, in *In re Estate of Pentrack*, the decedent's nephew was appointed administrator of the decedent's estate. *In re Estate of Pentrack*, 405 A.2d at 880. The decedent's brother and sister-in-law conveyed property to the decedent by a deed in April 1962, but the deed was never recorded. *Id*. Decedent, several months before he died, gave the deed to his nephew with instructions to return the property back to his brother by destroying the deed when he died. *Id*. The nephew did not destroy the deed. *Id*. Instead, the nephew filed a petition for a declaratory judgment, which, in pertinent part, sought a determination of whether the title to the property was legally conveyed by the decedent back to the decedent's brother and the brother's wife. *Id*. The Orphans' Court division of the Court of Common Pleas of Cambria County held there was no gift of real estate back to the brother and sister-in-law and that the property remained with the estate. Common pleas, upon review *en banc*, determined that there was a gift of the real estate and the property

19

was conveyed back to the brother and sister-in-law. *Id.* The nephew appealed the *en banc* decision. *Id.*

The Pennsylvania Supreme Court determined that because title to real estate may be passed by delivery of a deed without recording it, the 1962 conveyance of the property gave title to the decedent. *Id.* (citing *Malamed*, 80 A.2d at 853). The Supreme Court, however, determined that decedent's attempt to re-convey the title to his brother and sister-in-law at the time of his death violated Section 4 of what is referred to as the Statute of Frauds, Act of April 22, 1856, P.L. 532, 33 P.S. § 2, and that "[a]n agreement to sell land not signed by the seller or an agent cannot be enforced against the seller." *Id.* The Pennsylvania Supreme Court concluded that, because there was not a writing signed by decedent re-conveying the property, the property remained with the estate. *Id.* Accordingly, we agree with Objectors that title to real estate may be passed by execution and delivery of a deed, before or even without recording it.

Second, in *Herr*, the plaintiffs were two sisters who filed a bill in equity seeking to compel their other sister, the defendant, to: (1) produce and record two deeds for three tracts of land in Lancaster County; (2) declare two deeds covering part of the same property null and void; and (3) enjoin the defendant from selling or in any way disposing of the real estate. *Herr*, 50 A.2d at 281. The chancellor, after a hearing on the bill and answer, found against the plaintiffs. *Id.* The Court of Common Pleas of Lancaster County, *en banc*, dismissed the plaintiffs' exceptions and affirmed the chancellor's decision. *Id.* The plaintiffs appealed, arguing, in relevant part, that the chancellor erred in finding that there was no delivery of the deed conveying the home property and the thirteen-acre tract even though the deed

20

was executed and acknowledged by their father in 1935. *Id*. The Pennsylvania Supreme Court wrote:

> It is well established that delivery of a deed is necessary in order to render it legally operative . . . and that delivery is to be inferred from grantor's words and acts evidencing an intention on his part to surrender his title to the property embraced by his conveyance, and to invest his grantee therewith . . . . It is the general rule that there is a presumption, in the absence of proof to the contrary, that a deed was executed and delivered on the day it was acknowledged.

*Id*. at 281, 282 (citations omitted). The Supreme Court concluded that the grantor, by keeping the deed, did not intend to divest himself of the title to the home property and thirteen acres, and it affirmed common pleas' decision. *Id*. at 282. Accordingly, we agree with Objectors that the delivery of the deed for real property is necessary to render it legally operative and to convey title.

Third, in *Malamed*, the defendants purchased a property in Philadelphia by paying the down payment and taking title in the name of one of the defendant's brothers, who was a veteran, in order to obtain a mortgage through the Veteran's Administration. *Malamed*, 80 A.2d at 854. The defendant's brother obtained a mortgage for the property, "but all of the purchase price over and above the mortgage, as well as the adjustment expenses at settlement, were paid by the [defendants,] who entered into and remained in the exclusive possession of the premises." *Id*. The deed to the defendant's brother was dated and recorded in February 1947, and in June 1949, he executed and delivered a deed for the premises to the defendants. *Id*. The deed was not recorded until December 1949. *Id*. The defendant's brother, after delivery of the deed to the defendants but before it was recorded, executed a judgment note in favor of the plaintiff, and judgment was entered in October 1949. *Id*. The judgment was executed, and the sheriff sold the

21

property to the plaintiff, as judgment creditor, in July 1950, with the deed delivered to the plaintiff in due course. *Id*. The plaintiff filed an action for possession and to quiet title. The Court of Common Pleas of Philadelphia County entered judgment for the plaintiff, reasoning that a trust against judgment creditor, mortgagees, or purchasers is void unless a written declaration of trust by the holder of legal title has been recorded. *Id*. The defendants appealed.

On appeal, the Pennsylvania Supreme Court, in relevant part, reversed the common pleas' decision, concluding that the "trust was completely executed by the delivery of an unrecorded deed by [the defendant's brother] to defendants *before* the plaintiff had become a creditor of [the defendant's brother] . . . ." *Id*. at 854 (emphasis in original). The Supreme Court further concluded that the defendants were not relying on "equitable title but upon a *legal* title established by the delivery of a prior unrecorded deed." *Id.* at 856. "*Delivery* is all that is necessary to pass title, *recording* is only essential to protect by constructive notice any subsequent purchasers, mortgagees and new judgment creditors." *Id*. (emphasis in original). Accordingly, we agree with Objectors that legal title to real property passes from a grantor to a grantee as of the date of delivery of the deed thereto.

Finally, in *Fiore*, the husband-grantor, during his lifetime, executed a deed to his wife-grantee, conveying his interest in lands in Allegheny County. *Fiore*, 174 A.2d at 859. In September 1940, the husband asked an attorney to prepare a deed for purposes of recording. *Id.* At that time, the deed was executed, witnessed, and acknowledged. *Id.* The husband died in September 1942. *Id.* The deed was not recorded until November 1957, long after the husband's death, when the wife became aware of the transaction after the deed was rediscovered. *Id*. at 860. His son, the plaintiff, instituted an action in equity in the Court of

22

Common Pleas of Allegheny County against decedent's wife, the defendant, to obtain judicial nullification of the deed. The chancellor dismissed the complaint, and common pleas, *en banc*, granted a final decree in favor of the defendant. *Id*. at 859. The plaintiff appealed. *Id*.

> The Pennsylvania Supreme Court summarized the relevant law as follows:

> In order to validate defendant's claim to the ownership of the property involved[,] there are two indispensable requisites: (1) a donative intent upon the part of the grantor, *i.e.*, an intent to make a gift to the grantee then and there, when the deed was executed; [and] (2) a delivery of the deed to the grantee, either actual or constructive, which divested the donor of all dominion over the property and invested the donee therewith. The recording of the deed was not essential to its validity or transaction of the title. Nor was it essential that the grantee have knowledge of the transaction. By subsequent acceptance, she ratified the original delivery if such occurred.

> However, there must have been a delivery of the instrument to the grantee and while the execution, sealing, acknowledging, and recording of a deed gives rise to a presumption of delivery, this is a factual presumption and as such, is rebuttable.

> For a legal delivery to be effected, it is not necessary that the deed be delivered directly to the grantee. It may be placed in the possession of a third party for delivery to the grantee upon the happening of a specified contingency. In such cases, the delivery date is that when the donor effectuated his intention.

*Id*. at 859-60 (citations omitted). The Supreme Court reasoned that based on the record, the husband "continued his complete control over the property until his death . . . [and] [a]t no time did he tell the grantee in the deed, or any members of his family, that he had deeded over his interest to the defendant." *Id*. at 860. The Supreme Court reversed the decree and directed common pleas to enter a decree in favor of the plaintiff. *Id*. at 861. Accordingly, we agree with Objectors that it is not necessary that delivery of a deed be made to the grantee himself or herself, but

23

rather, a delivery to a third person (*e.g.*, a settlement agent) for the grantee may constitute a valid delivery sufficient to pass title.

For the reasons set forth above, a determination based on the pleadings and affidavits as to whether Objectors were legal owners at the time of the upset tax sale based on having allegedly received the deed to the Property prior to the September 13, 2018 upset tax sale would be improper. An evidentiary hearing is required to resolve this issue.

### C. Due Process

We now address Tax Sale Purchaser's argument that Common Pleas abused its discretion when it denied him due process of law by granting the Petition without an evidentiary hearing. Tax Sale Purchaser argues that Common Pleas abused its discretion when he was denied the opportunity to produce evidence that Prior Owner was provided with the notice of sale prescribed by Section 602 of the RETSL and that Prior Owner had actual notice of the upset tax sale prior to September 13, 2018. Common Pleas did not address this issue in its Pa. R.A.P. 1925(a) opinion.

"It is the trial court's exclusive province, as fact-finder, to evaluate evidence adduced at the proceedings, make credibility determinations, and draw inferences from the evidence presented." *In re Consolidated Reps. & Return by Tax Claims Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth.) (*Northumberland Cnty.*) (*en banc*), *appeal denied*, 141 A.3d 482 (Pa. 2016). "'Pennsylvania courts have long recognized the broad discretion of the fact-finding [t]rial [c]ourt . . . .'" *Id.* (quoting *Brady v. Borough of Dunmore*, 479 A.2d 59, 62 (Pa. Cmwlth. 1984)). As our Supreme Court explained:

> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration . . . . An "abuse of discretion" or failure to exercise sound discretion is not merely an error in judgment. But if, in reaching a

24

conclusion, [the] law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

*Northumberland Cnty.*, 132 A.3d at 653 (quoting *In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960*, 590 A.2d 1, 3 (Pa. 1991)).

"Our Supreme Court has emphasized that due process under both the United States and Pennsylvania Constitutions must be satisfied whenever the government subjects a citizen's property to forfeiture for nonpayment of taxes." *Battisti*, 76 A.3d at 113. Further:

[A] taxing authority's strict compliance with the tax law does not necessarily satisfy the demands of due process. There can be no deprivation of property without notice and an opportunity to be heard. Interests in real property [are] entitled to the most rigorous [due process] protections. Where a question of fact is raised, a hearing is necessary because [w]ithout a full hearing on the matter, the door might be opened to fraud.

Once [the t]axpayer presented a *prima facie* challenge to the tax sale, it became the burden of the [t]ax [c]laim [b]ureau to prove strict conformance with the notice provisions of the [the RETSL]. The [t]ax [c]laim [b]ureau's answer and [the p]urchaser's answer and new matter raised a dispute on the central factual question, *i.e.*, whether [the t]axpayer was given the notice required for an upset tax sale to be valid under the [RETSL] and under the Due Process Clause found in the United States and Pennsylvania Constitutions.

*Battisti*, 76 A.3d at 116 (citations omitted). We vacated the common pleas order granting the purchaser's motion for judgment on the pleadings, and we remanded the matter for an evidentiary hearing. *Id*. at 116-17.

Here, we agree with Tax Sale Purchaser that Common Pleas abused its discretion when it denied him the opportunity to produce evidence at an evidentiary hearing. Common Pleas denied Tax Sale Purchaser an opportunity to present evidence in support of his contentions that Prior Owner was provided with the notice of sale prescribed by Section 602 of the RETSL and that Prior Owner had actual

25

notice of the upset tax sale prior to September 13, 2018. As a result, Tax Sale Purchaser did not receive the due process to which he is entitled. *See Battisti*.

## IV. CONCLUSION

For the above reasons, we vacate Common Pleas' order and remand the matter to Common Pleas with direction that it conduct an evidentiary hearing. During that hearing, the parties may present evidence regarding Objectors' standing and whether the Bureau complied with the requirements of RETSL, including evidence relating to notice received by Prior Owner and the Bureau's attempts to notify Prior Owner of the upset tax sale.


P. KEVIN BROBSON, Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Amy Nguyen and Kenny Pham      :
     :
     v.      :    No. 393 C.D. 2020
     :
Delaware County Tax Claim      :
Bureau and Chadd Neumann      :
     :
Appeal of: Chadd Neumann      :

# **O R D E R**

AND NOW, this 29th day of December, 2020, the order of the Court of Common Pleas of Delaware County (Common Pleas), dated January 15, 2020, is VACATED, and the matter is REMANDED to Common Pleas with instructions that Common Pleas conduct an evidentiary hearing and issue a new decision and order.

Jurisdiction relinquished.

_____
P. KEVIN BROBSON, Judge